## UNITED STATES v. HAAS.

### (District Court, S. D. New York. May 9, 1906.)

### No. 202.

1. **CRIMINAL LAW (§ 242\*)—PROCEEDINGS FOR REMOVAL OF ACCUSED FROM ONE FEDERAL DISTRICT TO ANOTHER—SUCCESSIVE APPLICATIONS.**

   The decision of a United States commissioner refusing to commit a prisoner for removal to another federal district for trial on a criminal charge does not render the question of the right to such removal res judicata, but ordinarily, in the absence of special circumstances, it should be held conclusive on the same facts.

   [Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 242.\*]

2. **CONSPIRACY (§ 23\*)—CONSPIRACY TO COMMIT OFFENSE AGAINST UNITED STATES—CONSTRUCTION OF STATUTE.**

   Assuming that the common law as it existed in Maryland when the District of Columbia was ceded exists in the District, and that it makes misconduct in office a criminal offense, it is not an offense against the United States as a distinct sovereign in such sense that an indictment will lie under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), for conspiracy to commit such offense in the District, especially against a person who is not a resident thereof.

   [Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 23.\*]

3. **UNITED STATES (§ 35\*) — PUBLIC OFFICER OF UNITED STATES — OFFICER OR EMPLOYÉ.**

   A person engaged in the Department of Agriculture as an assistant statistician is not a public officer of the United States.

   [Ed. Note.—For other cases, see United States, Dec. Dig. § 35.\*]

4. **UNITED STATES (§ 52\*)—OFFICERS—OFFENSES AGAINST UNITED STATES.**

   The giving out of information by a clerk or employé of a department of the United States government in respect to a matter which it was understood should be kept secret, although for private gain, is not a crime against the United States unless made so by law.

   [Ed. Note.—For other cases, see United States, Dec. Dig. § 52.\*]

5. **CONSPIRACY (§ 33\*)—"CONSPIRACY TO DEFRAUD UNITED STATES"—ELEMENTS OF OFFENSE.**

   An agreement between a clerk or employé in the Department of Agriculture and others pursuant to which such clerk furnished to the others advance information of the contents of a report to be afterward made public by the department regarding the condition of the cotton crop, based on which information the outsiders speculated in the market for the benefit of all parties to the agreement, does not constitute a conspiracy to defraud the United States within the meaning of Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676).

   [Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 33.\*]

Henry L. Stimson, U. S. Atty. (Morgan H. Beach, Sp. Asst. to Atty. Gen., of counsel), for the United States.

Rockwood & Salisbury (Thomas E. Rush and Charles W. Ridgway, of counsel), for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HOLT, District Judge. This is an application under section 1014 of the Revised Statutes of the United States for the commitment and removal to the District of Columbia for trial of the defendant Moses Haas.

On October 2, 1905, the grand jury of the Supreme Court of the District of Columbia indicted Edwin S. Holmes, Jr., Frederick A. Peckham, and the defendant Moses Haas. Holmes resided in Washington, D. C., and Peckham and Haas resided in New York. A bench warrant was issued by the Supreme Court of the District of Columbia for the apprehension of the defendants, upon which an application was made to me under section 1014 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 716) for the commitment and removal of the defendant Haas to the District of Columbia. A similar previous application was made to Commissioner Ridgway, a commissioner of this court, under which a warrant was issued, Haas arrested, and hearing had. The government put in evidence the indictment and proved the prisoner's identity; thereupon the prisoner's counsel moved to discharge the prisoner upon the ground that the indictment showed upon its face that no offense had been committed. Commissioner Ridgway, after an elaborate argument, rendered his decision, in which he held that the indictment did not allege that any offense had been committed, and discharged the prisoner. Thereafter this application was made to me. The government's counsel represented that an important and novel question of law was involved, and that, as no appeal by the government was authorized from the decision of the commissioner, it was desired to submit the question again for consideration.

The defendant's counsel claims that the decision of Commissioner Ridgway should be held to be conclusive. He admits that such a decision is not technically res adjudicata, and the authorities so hold. The decision of a committing magistrate refusing to hold a prisoner for trial or removal, like the grand jury's decision in refusing to find an indictment, is not res adjudicata, and another application can be made upon the same facts. In re Martin, 5 Blatch. 307, Fed. Cas. No. 9,151; Cooley's Const. Lim. 404; 1 Bish. New Cr. Law, § 1014, par. 2; Com. v. Hamilton, 129 Mass. 479. But ordinarily, in the absence of special circumstances, the decision of any judicial officer having jurisdiction should be held to be conclusive on the same set of facts. In this application I sit as a committing magistrate, with exactly similar jurisdiction as that of the commissioner. The evidence submitted is precisely the same in both cases, and it would be entirely proper in this case to discharge the prisoner upon the ground that he has already been discharged by the judicial decision of another magistrate having concurrent jurisdiction. Moreover, I have read the very elaborate and able opinion of Mr. Commissioner Ridgway, and concur entirely in his conclusions and in the grounds upon which he bases them. But as the question involved is a novel and important one and has been argued very elaborately by counsel upon both sides, I will add a few suggestions, in addition to those contained in the

opinion of Mr. Commissioner Ridgway, which seem to me to have weight.

The indictment charges the defendant with the crime of conspiracy under section 5440, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3676). That section provides that:

"If two or more persons conspire either to commit an offense against the United States, or to defraud the United States in any manner, or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty."

The indictment, which is very long, alleges in substance that the Department of Agriculture at Washington, D. C., is required by law to collect information about the crops and to make monthly crop reports, including reports upon the cotton crop; that Holmes was an associate statistician in said department; that it was the duty of all the officers and employés of the department, including Holmes, not to divulge the information embodied in the crop reports before the reports were promulgated by the Secretary of Agriculture; that Holmes, Peckham, and Haas entered into a conspiracy under which Holmes was to furnish to Peckham and Haas information of what the crop reports were to be before they were published, in reliance upon which Peckham and Haas were to conduct speculations in cotton and divide the profits among the three defendants; that Holmes furnished such information, and Peckham and Haas carried on such speculations, and that large profits were divided between them. The indictment contains two counts. The first count alleges that by reason of these facts the parties indicted were guilty of a conspiracy to commit an offense against the United States, and the second count alleges a conspiracy, by reason of the same facts, to defraud the United States. Counsel for the defendant bases his motion to discharge the prisoner on the proposition that the facts stated do not show that the defendants conspired either to commit an offense against the United States or to defraud the United States.

The counsel for the government concedes that there is no statute of the United States which makes such acts as are alleged in the indictment an offense, and that there are no written rules or regulations which the Department of Agriculture has adopted, pursuant to any statute or otherwise, prohibiting such transactions. He admits that such acts would not constitute an offense anywhere in the United States, except in the District of Columbia. His claim is that the law of Maryland, as it existed at the time of the cession by that state to the general government of the District of Columbia, was continued and still exists in the District of Columbia; that the common law was a part of the law of Maryland at that time; that it is therefore now a part of the law of the District of Columbia; that misconduct in office is an offense at common law; that Holmes was guilty of misconduct in office; that the defendants conspired to have Holmes do acts which amounted to misconduct in office; and that the defendants, therefore, are guilty of a conspiracy to commit an offense against the United States.

In the first place, it seems to me that whatever law exists in the District of Columbia which is based on the law of Maryland, or the common law as distinguished from the statute law of the United States, is analogous to and is to be deemed precisely similar to the state law in the rest of the United States. It is just as though the state of Maryland had never ceded any district to the government, and the capital had been established in the state of Maryland. In such a case no one would pretend that an offense against the law of Maryland was an offense against the United States. In my opinion, section 5440, relating to a conspiracy to commit an offense against the United States, only relates to such offenses as are offenses against the United States as a distinct sovereign. Nothing is better settled than that there are no common-law offenses against the United States. United States v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591, and cases cited. Therefore, in my opinion, assuming that Holmes could be indicted for misconduct in office in the District of Columbia, no person can be indicted in the federal courts for a conspiracy to commit misconduct in office, especially a person who does not reside in the District of Columbia.

In the next place, the question is whether, on the facts alleged in the indictment, Holmes has been guilty of misconduct in office in the sense of the common law. No one would pretend that every form of misconduct in office in the ordinary sense is a crime. Bishop substantially defines misconduct in office in its penal sense as any act or omission in breach of a duty of public concern by one who has accepted public office, provided his act is willful and corrupt and is not judicial. Bishop's New Crim. Law, §§ 459, 460. In my opinion, on the facts alleged, it is doubtful whether Holmes was a public officer. He is described in the indictment as an "associate statistician" in the Bureau of Statistics of the Agricultural Department. The act of July 14, 1890, c. 707, 26 Stat. 288 (U. S. Comp. St. 1901, p. 286), enumerates the persons engaged in the Department of Agriculture under the special title of "Clerks and Employés." This list includes a statistician; there is no mention in it of such a person as an "associate statistician." But, as the statistician is put under the list of clerks and employés, the presumption is that an associate statistician is a clerk, and not a public officer, within the meaning of the law and in a legal sense. A mere clerk in a public office is not a public officer. United States v. Smith, 124 U. S. 525, 8 Sup. Ct. 525, 31 L. Ed. 534.

In the next place, the duty violated in misconduct in office must be a legal duty. The indictment alleges that Holmes was charged with the duty of keeping secret the cotton crop reports, but the indictment contains no allegation showing how he was charged or by what authority he was charged. In The King v. Everett, 8 Barnewall & Cresswell's Reports, 114, the defendant was indicted for soliciting a customs officer to permit goods to be imported without paying duty. The defendant was convicted. A motion was made in arrest of judgment, on the ground that the indictment did not allege the fact from which the duty arose. Lord Tenterden said:

"The allegation that Hooper was a person employed in the service of the customs is an allegation of fact. The allegation that it was his duty to seize goods which upon importation were forfeited is an allegation of matter of law. That being so, the fact from which that duty arose ought to have been stated in the count."

A fair inference from the language of this indictment is, and the counsel for the government admits, that there had been no formal rule promulgated imposing a duty upon the employés of the Agricultural Department to keep the crop information secret before it was published. It may be assumed that it was understood in the office that it should be kept secret, and that it was a dishonorable act on the part of Holmes to publish it; but we are dealing with a question of crime. Unfaithful, dishonorable, or treacherous conduct, however censurable morally, is not a crime, unless made so by law. If Holmes, under this indictment, can be convicted of crime, the secretary of a judge who reveals the contents of a judge's opinion before it is handed down, or an attorney who betrays the confidence of his client, or a senator who tells what had taken place in executive session, could be convicted of crime, without any statute on the subject.

The government relies particularly upon the case of Tyner v. United States, 23 App. D. C. 324. That case arose upon a demurrer to an indictment against Tyner and another for conspiracy. Tyner was an assistant attorney in the Post Office Department and an officer of the department. He was required by the regulations of the department to perform a certain duty, and it was alleged that he had entered into a corrupt conspiracy not to perform that duty. I regard the Tyner Case as an extreme case, but the facts in it are very much stronger than in this case. With the highest respect for the distinguished court which rendered the decision, I am not able to consider it as controlling in this case.

The second count of the complaint charges that the acts in question defrauded the government of the United States, but it seems to me that this claim is entirely untenable. Perhaps it is not necessary that in all cases the United States be deprived of money or property in order to be defrauded. It was held in United States v. Bunting (D. C.) 82 Fed. 883, that two persons were guilty of a conspiracy to defraud the United States when one of them, an applicant for a government position, obtained an appointment by having the other assume his name and pass the civil service examination. But, in that case, the fraud upon the United States was alleged under section 5418 of the United States Revised Statutes (U. S. Comp. St. 1901, p. 3666), which provides that any person who utters or presents to any officer of the United States a false writing for the purpose of defrauding the United States is guilty of a crime. The United States by that proceeding was deceived and defrauded into appointing a person to a public position who presumably was not fit for it; but I cannot see that cases of this kind have any bearing upon the question whether Holmes, in divulging information to one person which had been collected by the government for the purpose of being divulged to the public generally, defrauded the United States of anything by enabling the person to whom he divulged it to speculate and make money on the informa-

tion. The United States was not defrauded of anything. One citizen simply received information before others which was intended to be given to all the citizens, and which was collected for the purpose of being ultimately furnished to all.

In removal cases the magistrate undoubtedly should not refuse removal upon technical or doubtful questions. Those questions should properly be left to the determination of the court in which the indictment has been found. But when an indictment appears, upon inspection, to clearly charge no offense, so that, in the opinion of the committing magistrate, no conviction can possibly be had, it is the duty of the magistrate not to order the removal of a citizen to a distant state or district for trial.

The simple fact is that these defendants, if the allegations of the indictment are true, were guilty of grossly dishonorable conduct, which might very properly be made criminal by statute. The defendant's counsel asserted on the argument that a bill for that purpose was pending in Congress. If such an act is passed, persons guilty of such misconduct can be criminally punished; but, in my opinion, until it is passed, they cannot.

My conclusion is that the defendant should be discharged.