## CHICAGO GREAT WESTERN RY. CO. v. EGAN.

(Circuit Court of Appeals, Eighth Circuit.   March 14, 1908.)

No. 2,596.

1. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—CONTRIBUTORY
   NEGLIGENCE—SUFFICIENT EVIDENCE FOR JURY.

   Three freight cars had been placed by an engineer on a passing track
opposite a platform at a station to be partially unloaded there.   There
was a public road crossing east of them, and east of this crossing was
the forward part of the train which consisted of about 20 freight cars.
The engineer was upon the ground by the side of his engine which stood
upon the main track near the three cars.   The conductor there told the
engineer to go up when he got ready, and couple up and back down.   The
engineer testified that after he climbed into his cab the conductor said to
him, "John, I will make the coupling at the crossing when you get ready
to back up."   A workman who stood by testified that the conductor said
to the engineer at that time, "Look out for us. we may not be done work-
ing in the car," and there was no other testimony to this saying.   The
hind brakeman was then in the car unloading it.   The conductor went to
work in one of the three cars to aid the hind brakeman to unload them.
The engineer took his engine to the east end of the passing track, coupled
it up to the forward end of the train, and without farther signal backed
it into the three cars, threw the conductor out of one of them by the im-
pact, and he was killed by the fall.   The engineer could not see the three
cars or the rear of his train after he ·coupled his engine to it, and he
testified that he did not know that the conductor was in one of the cars,
and that he relied on the conductor's statement that he would make the
coupling.   ·

   *Held*, there was substantial evidence of the negligence of the engineer,
the evidence that the conductor was guilty of contributory negligence was
not clear, and these issues were rightly submitted to the jury.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
ant, §§ 1034, 1051–1067, 1089–1132.]

2. NEGLIGENCE—TRUE TEST OF DOUBTFUL ACT CARE PERSONS OF ORDINARY
   PRUDENCE USE UNDER SAME CIRCUMSTANCES.

   An·act or omission may be in itself clearly negligent or clearly free of
negligence.

   If its character is doubtful, the test of actionable negligence is the de-
gree of care which persons of ordinary intelligence and prudence common-
ly exercise in the same circumstances.   If the care exercised in such a
case rises to or above that standard there is no actionable negligence, if
it falls below that standard there is.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 6.]

3. SAME—EVIDENCE OF ORDINARY PRACTICE OF REASONABLE MEN IN SAME CIR-
   CUMSTANCES GENERALLY COMPETENT.

   In such a case the evidence of ·the ordinary practice and of the usual
custom, if any, of ordinarily prudent and intelligent persons in the per-
formance under the same or like circumstances of the same or like acts is
ordinarily competent upon the issue of negligence in the performance or
omission of an act.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 238.]

4. MASTER AND SERVANT — EVIDENCE OF ORDINARY PRACTICE COMPETENT
   THOUGH IT FAILS TO ESTABLISH UNIFORM CUSTOM.

   There was substantial evidence that the ordinary practice and the gen-
eral custom of operators on defendant's railroad was not to move trains,
or parts of trains, on verbal orders of conductors without hand signals,
but this evidence was not undisputed.   There was substantial evidence
that it was the common practice of the crew of the train on which the
injury was inflicted to move it, and parts of it, on verbal orders of the

conductor without hand signals, but this evidence was not without contradiction.

*Held*, a motion to strike out the evidence of the ordinary practice and general custom upon the railroad was properly denied, and a request to instruct the jury that they should disregard that evidence, and that the undisputed evidence was that the common practice of the crew on the train on which the injury was inflicted was to move it, and the parts of it, upon the verbal orders of the conductor, was rightly refused, because the latter evidence was disputed, and because the evidence of the ordinary practice of the operators on the railroad was competent and material even if it failed to establish a uniform custom.

5. APPEAL AND ERROR—PAGES OF BILL OF EXCEPTIONS IN TRANSCRIPT OF RECORD WHERE RULINGS CHALLENGED APPEAR, MUST BE SPECIFIED IN THE BRIEF.

Where counsel do not consider errors assigned of sufficient importance to point out in their brief the pages in the bill of exceptions in the printed transcript of the record, where the rulings of the court challenged with the objections and exceptions to them may be found, the court will not ordinarily deem them of sufficient materiality to search through the record, find, and discuss them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3095.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Northern District of Iowa.

D. J. Lenehan (A. G. Briggs and L. G. Hurd, on the brief), for plaintiff in error.

J. W. Kintzinger and M. J. Wade (Oliver Longueville, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. Mr. Egan was the conductor, Mr. Tully was the engineer, and Mr. Shine was the head brakeman on way freight train No. 85 going east at Graff station in the state of Iowa. This train consisted of an engine and about 26 freight cars. The passing track at this station lay on the south side of the main track, and it was about a mile in length. The train had been placed upon the passing track in such a way that three cars which contained freight to be unloaded at this station were set opposite the platform at the depot, and the hind brakeman was engaged in taking freight out of them. After the forward end of the train had been placed upon the passing track the engineer and the brakeman had detached the engine and taken it back down the main track to the coal chute which was near the three cars, and the engineer had descended to the ground. The public road crossed the railroad a short distance east of the station and platform, and the three cars to be unloaded stood west of this crossing while the forward end of the train stood east of it. As the engineer stood upon the ground by the side of his engine the conductor said to him, "You go up when you get ready, and couple up and back down. We are already to go as soon as we set out three cars." Thereupon the engineer climbed into his cab which was open. He testified that after he had climbed to his seat box the conductor said to him, "John, I will make the

coupling at the crossing here when you get ready to back up." Wilkin, a workman who was standing there, testified that as the engineer was seating himself in his cab, and as the conductor was walking away and was right beside the engine, the latter turned, faced the engineer, and "hollered" to him, "Look out for us, we may not be done working in the car." The engineer denied that Egan gave him this warning, and the testimony of these two witnesses was the only evidence of the saying of the conductor after the engineer climbed into his cab. The conductor went to work in one of the three cars to assist the hind brakeman to unload furniture from it. The head brakeman, who was not one of the regular crew, but a substitute for this trip, testified that the conductor told him to go up and couple on to the head end of the train, and back down and set out three cars. The engineer and the head brakeman took the engine out the main track to the east, backed it in on the passing track, coupled it to the east end of the 20 cars which constituted the forward part of the train, and then without signals backed them westerly against the three stationary cars for the purpose of coupling to them and as the forward end of the train struck these cars the impact threw the conductor, who was still at work unloading the furniture in one of the cars out of its side door onto his head upon the platform and killed him.

The engineer testified that he could not see the crossing or the rear end of his train after he had coupled to it, that he did not know that the conductor was unloading freight on the standing cars, and that he relied on the latter's statement to him that he would make the coupling at the crossing. He testified at the coroner's inquest that the head brakeman gave him a signal to back up after his engine was coupled to the forward end of the train, but he admitted at the trial that he received no such signal. The head brakeman testified that he knew that the rear brakeman was unloading freight from the cars at the platform when he started east with the engine to couple it to the forward end of the train, that after that coupling was effected he climbed onto the fourth car from the engine and rode back upon it, that he saw no one at the crossing and knew that the conductor was in one of the three cars, but that the couplers were automatic and that he relied on the conductor's direction to him to back down.

There was much evidence that the ordinary practice of the operators of this railroad company and their customary method of making such a coupling on such an order as that which the engineer related, was to push the portion of the train attached to the engine against standing cars only after receiving hand signals in the day and after receiving light signals in the night. There was testimony that the common practice of the crew which generally operated this particular train was to move it without such signals on the verbal orders of the conductor. But there was also testimony to the contrary, testimony that the ordinary practice on this train was when such a verbal order was given to couple the engine to the cars to be moved, then to give three blasts of the whistle as a signal that the

engineer was ready to back up and to wait for a signal to do so, and if none was immediately given, to stay there until one was given. The evidence was undisputed that if the conductor's last words to the engineer as he left him to go to the car were, "Look out for us, we may not be done working in the cars," the backing of the forward part of the train into the stationary cars without any farther signal was not an ordinary or customary movement under such circumstances, and that it is not an ordinary or customary operation of an engine or train for an engineer to run it against cars in which he knows men are at work unloading their contents. There was other evidence at the trial, but none that was material to the issues in this court.

This action was brought against the railroad company for the alleged negligence of the engineer and the head brakeman which the plaintiff below, the administratrix of the estate of the conductor, averred in her complaint caused the death of the latter, and for which, if the negligence of the engineer or brakeman caused it, the railway company was liable under a statute of Iowa. At the close of the evidence the court below denied a request of the defendant to instruct the jury to return a verdict in its favor, and this ruling is challenged by its counsel because, as they say, there was no substantial evidence of the negligence of the engineer or of the negligence of the brakeman, and the evidence was conclusive that the conductor was guilty of negligence which contributed to his injury. But if, as the witness Wilkin testified, the conductor's last words to the engineer before the latter started to couple his engine to the forward end of the train were, "Look out for us, we may not be done working in the car," the engineer certainly failed to exercise ordinary care when he backed that portion of the train against the car in which the conductor was working without giving any warning that he was about to do so, and without receiving any signal so to do. Moreover, if those words constituted the last order of the conductor, he may have relied upon the engineer's obedience to them, and upon the latter's exercise of ordinary care, and have gone to his work in the car in reliance upon them. It is not so clear that a man of ordinary prudence and intelligence would not have done so, that the duty devolved upon the court to instruct the jury that in so doing he was guilty of negligence which caused his injury.

It is contended, however, that there was no substantial evidence that the direction to look out for them was the last order of Egan. The engineer testified that it was not. He agrees with Wilkin that his cab was open, that after he climbed into it the conductor gave him farther instructions, but he testifies that the conductor said that he would make the coupling at the crossing when the engineer got ready to back up. The engineer acted as though that statement was true, for he backed the train over the crossing without farther signal, and without warning those in the car that the head end of the train was coming. His testimony, however, is not strengthened by the fact that he testified before the coroner that he received a signal from the head brakeman to back this portion of the train up before he did

so, and that at the trial below he conceded that he backed it without any signal. Wilkin, on the other hand, testified positively that the conductor's instructions were, "Look out for us, we may not be done working at the car." The conductor acted as though that was his order. He went to work in the car unloading it and remained there until he was injured, without taking any farther precautions to guard against the impact of the forward part of the train, to protect travelers on the highway from its movement, or to make the coupling at the crossing. The car in which he went to work was standing by the platform for the purpose of being unloaded, and the hind brakeman was at work in it, or in one of the two standing with it, when he gave the instruction to the engineer. The positive testimony of Wilkin, the acts of the parties, the circumstances surrounding them at the time of the accident, and the fact that there is but one witness to contradict the statement of Wilkin, constitute evidence too material to be disregarded, and there was no error in submitting to the jury the question whether the testimony of Wilkin, or that of the engineer, relative to this last instruction of the conductor, was true. The defendant's request for an instructed verdict was therefore properly denied.

Counsel for the defendant moved the court at the close of the evidence to strike out all the testimony that it was the ordinary practice and the usual custom on the defendant's railroad to move trains, and parts of trains, only on hand signals, and requested the court to instruct the jury thus, "the uncontradicted evidence established the fact that it was common practice for the conductor Egan to direct the engineer, Tully, to back down his train, or parts of his train, on verbal orders, and without waiting for any other signal before moving the same. You are instructed that the ordinary and usual practice obtaining as to other trains, or on other railways, is entirely immaterial in this controversy, and you will therefore reject all evidence upon that question." The court denied the motion and refused to give the instructions, and these rulings are specified as error. The plaintiff below averred in her complaint, and the defendant denied in its answer, that the ordinary and proper way to move an engine and cars when coupling them to other cars, was to do so by hand signals received from a person stationed at or near one of the cars to be coupled, and that the engineer and head brakeman were guilty of causal negligence in that they attempted to make the coupling in the absence of such signals. There are cases in which the act or omission is in itself so plainly negligent that the fact that other persons in the same or like circumstances have been guilty of it is futile to change its character or effect. Dawson v. Chicago, R. I. & P. Ry. Co., 114 Fed. 870, 872, 52 C. C. A. 286, 288; Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed. 529, 534, 63 C. C. A. 27, 32. But where the nature of the act or omission is of a doubtful character, as in the case in hand, the true test of actionable negligence is the degree of care which persons of ordinary intelligence and prudence commonly exercise under the same circumstances. If, in a given case, the care exercised rises to or above that standard, there is no actionable negligence. If it falls below it there is. Hence in an action for damages

for negligence evidence of the ordinary practice and of the uniform custom, if any, of such persons in the performance under similar circumstances of acts like those which are alleged to have been negligently done, is generally competent evidence, because it presents to the jury the correct standard for their determination of the issue whether or not the defendant was guilty as charged. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 416, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Union Pacific R. Co. v. Daniels, 152 U. S. 684, 691. 14 Sup. Ct. 756, 38 L. Ed. 597; Washington, etc., Ry. Co. v. McDade, 135 U. S. 554, 569, 10 Sup. Ct. 1044, 34 L. Ed. 235; Texas & Pac. R. Co. v. Barrett, 166 U. S. 617, 619, 620, 17 Sup. Ct. 707, 41 L. Ed. 1136; Choctaw, etc., R. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96; Charnock v. Texas & Pac. R. Co., 194 U. S. 432, 437, 24 Sup. Ct. 671, 48 L. Ed. 1057. There was, therefore, no error in the admission of evidence of the ordinary practice and of the custom of the operators of the defendant in the use of hand signals in the movement of freight trains and the parts thereof. Counsel argue, however, that this evidence should have been stricken out at the close of the trial because it failed to establish a uniform custom under the rule in Chicago, Milwaukee & St. Paul Ry. Co. v. Lindeman, 143 Fed. 946, 75 C. C. A. 18. Conceding that it so failed, nevertheless it was competent and persuasive evidence of the ordinary practice of men of reasonable prudence and care under the same circumstances as those which surrounded the engineer at the time of this accident, and hence the motion was too broad, since it was to strike out not only the evidence of the custom but also the evidence of the degree of care which ordinarily prudent and cautious men commonly exercise in the same circumstances. Southern Pac. Co. v. Hetzer, 135 Fed. 272, 284, 68 C. C. A. 26, 38, 1 L. R. A. (N. S.) 288. It is said that the motion should have been granted and the instruction should have been given because the evidence was undisputed that it was the common practice of Egan and Tully and of the crew of their train to move it, and the parts of it, upon the verbal orders of the conductor without hand signals, so that the ordinary practice of other prudent men on other trains became immaterial. The difficulty with this contention, however, is that the testimony that this was the common practice of Egan and Tully and of the crew of their train was not without contradiction. There was substantial evidence that the ordinary practice, even on that train, was to move its parts only on hand signals, and hence the court committed no error against the defendant when it denied its motion, refused its request, submitted that question to the jury, and instructed them as it did, that if they found that the common practice on that train was to move it, and the parts of it, on verbal orders from the conductor without any signals, or if they found that it was understood between Egan and Tully that the train should be so moved, then the plaintiff could not recover.

The next objection discussed in the brief is to a ruling upon a question to which no objection appears from the bill of exceptions to have been made, and it is accordingly dismissed.

The last two paragraphs of the brief for the company call our at-

tention to nine specifications of error, and cite the pages of the transcript of the record where the assignment of these alleged errors is printed, but they fail to point out any of the pages in the bill of exceptions printed in the transcript where any of the rulings, of the court, at which these specifications of error are leveled, or the objections or exceptions to these rulings may be found. The burden of proving by the record that the trial court has erred is upon the plaintiff in error, and where its counsel do not consider the errors which they assign of sufficient importance to point out in their brief the pages in the bill of exceptions printed in the transcript where the rulings which they challenge and the objections and exceptions thereto may be found, in accordance with Rule 24, of this court, and its former rulings, the court will not ordinarily deem the questions they seek to present of sufficient materiality to search through the record to find and review the rulings. Rule 24, par. 2 (3), 11 C. C. A. lxxxviii, 47 Fed. xi, Rule 21 Supreme Court, par. 2 (3); City of Lincoln v. Sun Vapor S. L. Co., 59 Fed. 756, 8 C. C. A. 253; Orr & Lindsley Shoe Co. v. Needles, 67 Fed. 990, 995, 15 C. C. A. 142, 147.

The judgment below must be affirmed, and it is so ordered.