CHICAGO GREAT WESTERN RY. CO. v. MINNEAPOLIS, ST. P. &
S. S. M. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.   February 21, 1910.)

No. 3,085.

*(Syllabus by the Court.)*

1. NEGLIGENCE (§ 1*)—NATURE AND ELEMENTS—TEST.
   An act or omission may be in itself clearly negligent, or clearly free of
   negligence, so that no evidence can change its character.
   But if its character is doubtful the best test of actionable negligence,
   where available, is the degree of care which persons of ordinary intelli-
   gence and prudence commonly exercise in the same circumstances.   If the
   care exercised in such a case rises to or above that standard, there is no
   actionable negligence ; if it falls below that standard, there is such neg-
   ligence.
   [Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig.
   § 1.*
   For other definitions, see Words and Phrases, vol. 5, pp. 4743–4763;
   vol. 8, pp. 7729–7731.]

2. NEGLIGENCE (§ 124*)—EVIDENCE—PRACTICE OF ORDINARILY PRUDENT PER-
   SONS.
   In the case of a doubtful act, the evidence of the ordinary practice and
   of the usual custom, if any, of ordinarily prudent and intelligent persons
   in the performance under the same or like circumstances of the same or
   like acts, is ordinarily competent upon the issue of negligence in the per-
   formance or omission of the act.
   [Ed. Note.—For other cases, see Negligence, Dec. Dig. § 124.*]

3. RAILROADS (§ 240*)—STATUTORY REGULATIONS—"JUNCTION"—CROSSING.
   Section 2033, Rev. Laws Minn. 1905, which requires railroad companies
   to stop their trains before reaching junctions with or crossings by rail-
   roads, imposes no duty upon them to stop such trains before reaching
   connections of their own tracks with double tracks and connections of
   such tracks with side tracks which are all parts of one line of railroad,
   directed by the same management or controlled by the same operator.
   Such connections are not "junctions" within the meaning of this statute.
   [Ed. Note.—For other cases, see Railroads, Dec. Dig. § 240.*
   For other definitions, see Words and Phrases, vol. 4, pp. 3872, 3873.]

4. RAILROADS (§ 287*)—STATUTORY REGULATIONS—CROSSINGS.
   This statute imposes no duty on a railroad company in favor of those
   injured in a head-end collision between trains upon the same line of rail-
   road who suffered neither danger nor injury from crossing trains, and
   such parties can maintain no action against it on the ground that the
   trains which collided did not stop at some crossing.
   [Ed. Note.—For other cases, see Railroads, Dec. Dig. § 287.*]

5. APPEAL AND ERROR (§ 1008*)—REVIEW—FINDINGS BY COURT.
   A trial and finding by a court without a jury in an action at law is
   reviewable to the same extent and by the same procedure and not other-
   wise as a trial and verdict by a jury, with the single exception that when
   the finding is special the question, whether or not the facts found sustain
   the judgment, is open to consideration in the appellate court.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–
   3969; Dec. Dig. § 1008.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. APPEAL AND ERROR (§ 1010*)—RAILROADS (§ 297*)—COLLISION—EVIDENCE— SUFFICIENCY OF EVIDENCE NOT REVIEWABLE.

On a motion for judgment at the close of a trial of an action at law by the court, the only question reviewable is the question of law: Was there any substantial evidence to sustain the finding of the court? The question of fact whether or not the finding is supported by the weight of the evidence, or by sufficient evidence, is not open to consideration in the appellate court.

There was substantial evidence in this case that the plaintiff was not guilty of negligence which directly contributed to cause the accident, and a motion to dismiss the action upon the ground that it was was properly denied.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982; Dec. Dig. § 1010;* Railroads, Dec. Dig. § 297.*]

In Error to the Circuit Court of the United States for the District of Minnesota.

Action between the Chicago Great Western Railway Company against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company. From the judgment the Chicago Great Western Railway Company brings error. Affirmed.

H. Loomis (A. G. Briggs, on the brief), for plaintiff in error.
Alfred H. Bright, for defendant in error.

Before SANBORN, Circuit Judge, and RINER and WILLIAM H. MUNGER, District Judges.

SANBORN, Circuit Judge. On October 1, 1905, in the railroad yards at St. Paul and on a single track of the Northern Pacific Railway Company about 450 feet long, which both parties were entitled to use, and over which the passenger train of the Minneapolis, St. Paul & Sault Ste. Marie Railway Company going north to Minneapolis had the right of way, there was a collision between that train and a stock train of the Chicago Great Western Railway Company which was coming south toward South St. Paul. Thereupon the companies entered into a written agreement that the question of liability for the collision and for all losses and expenses growing out of it should be settled by an action in the court below which should be tried by Judge Charles F. Amidon without a jury. The action was brought, it was tried by Judge Amidon, who made a special finding of facts the legal effect of which was that the Great Western Company alone was guilty of negligence which caused the collision, that the "Soo" Company was guilty of no negligence which contributed to cause it, and that the former company was liable for the losses and expenses which resulted from it. The judgment against the Great Western Company founded upon this finding is questioned by this writ of error.

The first specification of error is that the court permitted the witness McGuire to answer the following question:

"Q. What was the fact as to how the Chicago Great Western passenger trains were handled out of the Union Depot for the period of your service prior to this accident, as compared with the way the 'Soo' trains were handled this morning?

"(That is objected to as immaterial.)

"A. The Great Western the same as the 'Soo' line."

Third street in St. Paul runs east and west, and the Union Depot is some distance south of it. The "Soo" train was going from the Union Depot to Minneapolis. It ran east on the southerly one of the double tracks of the Depot Company assigned to this service in a straight line about 1,000 feet and then along a curve to the north to a point about 100 feet south of a viaduct over the railroad tracks where the double track of the Depot Company connected with a single track of the Northern Pacific Company which ran north about 450 feet upon an ascending grade of 1.6 per cent. under the viaduct, across a single track of the Burlington Railroad Company which lay just north of the viaduct to a connection with the double tracks of the Northern Pacific Company which extended to Minneapolis. The "Soo" train was a heavy passenger train which had the right of way up this grade over the single track of the Northern Pacific Company, and it proceeded north until its engine entered upon the easterly one of the double tracks of the Northern Pacific Company, when a stock train of the Great Western Company which was coming south on the westerly one of these double tracks, ran into the "Soo" train. The rule of operation was that north-bound trains should go up the hill upon the east and south-bound trains should come down the hill on the west one of the double tracks of the Northern Pacific Company, and that all trains coming down on the west track should stop and wait until they received a signal from the switchman who was stationed at the north end of the single track before they entered upon that track. But the operators of the Great Western train, by their negligence, had lost control of it so that it did not stop until it ran upon the single track and into the side of the "Soo" train as it was passing to the double track. McGuire was the switchman stationed at the south end of the single track where it connected with the double track of the Depot Company. He testified that during the two years he had been employed there the trains of the Wisconsin Central, Minneapolis & St. Louis, Great Western, the "Soo," and the Northern Pacific Companies were operated over the same track that this "Soo" train passed over on the occasion of the collision; that there was a uniform custom of handling the passenger trains coming out of the Union Depot over these tracks; that they were handled by hand signals; that there was another switchman stationed between him and the depot who, when a train was ready to pull out over this Northern Pacific track, gave him a signal to that effect; that he then examined the Burlington track and crossing, the situation at Third street, and the switches at both ends of the single track to see that the crossing was free and the switches were properly set for the train to pass over the single track upon the easterly one of the double tracks of the Northern Pacific at its north end and then signaled back to the switchman between him and the depot to let the train come, and that as the engineer pulled up past that switchman he gave him a signal to come on. He testified that on the occasion of the collision this course was pursued, and he gave to the engineer of that train the signal to come on through his fireman, that ordinarily or frequently the firemen on trains of this character started to make their fires in the engines after this last signal was given, and that the firemen on the heavy passenger trains of the

Great Western Company pursued that course. It was in this state of the case and after this testimony had been received that the court admitted the answer to the question of which complaint is here made.

The question whether or not the "Soo" Company was guilty of negligence which directly contributed to the injury was an important issue in this case. There are cases in which an act or omission is in itself so clearly negligent that the fact that other persons in the same or like circumstances have been guilty of a similar act or omission is insufficient to modify its character or its effect. Dawson v. Chicago, Rock Island & Pacific Ry. Co., 52 C. C. A. 286, 288, 114 Fed. 870, 872; Gilbert v. Burlington, etc., Ry. Co., 128 Fed. 529, 534, 63 C. C. A. 27, 32. The act or omission of the "Soo" Company in this case, however, did not appear at the time this evidence was challenged to be of that character, and, where the nature of the act or omission is doubtful, the best test of actionable negligence, where available, is the degree of care which persons of ordinary intelligence and prudence commonly exercise under the same or like circumstances. If the care exercised in such a case rises to or above that standard, there is no such negligence, if it falls below it there is. The legal presumption was that the servants of the Great Western Company who had been operating its passenger trains upon the tracks leading out of St. Paul which were used by the "Soo" Company on the day of the accident were men of ordinary intelligence and prudence, and hence the fact that it had been their uniform practice to handle their trains under like circumstances in the same way that the "Soo" Company operated this train on that occasion was both competent and material evidence that it conducted it with reasonable care. Lake v. Shenango Furnace Company, 160 Fed. 887, 895, 88 C. C. A. 69, 77.

The second complaint is that the court permitted McGuire to testify that those operating the Great Western passenger trains and other passenger trains over this single Northern Pacific track had not been and were not in the habit of stopping for the crossing of the Burlington track which lay just north of Third street as they ran up the grade unless there was something extraordinary, unless they were stopped. There was a statute of the state of Minnesota which required every company operating a railroad to cause its trains to come to a full stop not less than 10 nor more than 60 rods before they reached any railroad junction or crossing at grade (Rev. Laws Minn. 1905, § 2033), and counsel contend that the admission of this evidence was erroneous because the violation of the statute was negligence per se, so that evidence of reasonable care in its violation was immaterial, and because testimony of the habit or custom of operating trains over these tracks was generally inadmissible.

But this statute was inapplicable to the case here presented and imposed no duty to the Great Western Company or to the operators of its stock train upon the "Soo" Company, or upon the crew upon its passenger train. The connection of the double track of the Great Northern Company with the north end of its single track was no "junction" within the meaning of this law. The junction to which this statute refers and to which it is limited is a junction of two or more railroads owned by different proprietors, or a junction of two or more

main lines, or of a main line and a branch line of the same company with each other. The Legislature never intended to apply it to, and it has no application to, every connection upon a continuous line of railroad in a single direction of its single track with its double tracks, or of those tracks with its side tracks, when all are directed by the same management and controlled by the same operator. United States v. Oregon & California Railway Co., 164 U. S. 526, 540, 17 Sup. Ct. 165, 41 L. Ed. 541.

It is neither decided nor admitted that this statute imposes any duty upon a railroad company to stop its engines or trains at every crossing of another railroad in the yards of railroad companies where switchmen or flagmen are stationed to notify enginemen of danger and of safety in making such crossings and where trains are handled by the signals of such switchmen or flagmen. But for the purposes of this case let it be conceded that this statute applied to the Burlington crossing, and that it was negligence per se for the "Soo" Company to cross the track of that company without stopping. "Negligence" is a breach of a duty. Those only to whom that duty is due and who have sustained injuries of the character its discharge was designed to prevent can maintain actions upon it. This statute imposed no duty to stop at this crossing in favor of all the world upon the "Soo" Company, nor in favor of any party for whose protection it was not enacted. Now it was passed to protect those riding upon railroad trains from injuries resulting from collisions with crossing trains. To parties thus injured, and to those in danger of injury so caused, and to them alone, the "Soo" Company owed the duty to stop before crossing the Burlington track, But it did not owe this duty to the Great Western Company, or to its operators on the stock train, or to any of the thousands of persons who were riding upon the line of the Northern Pacific Railroad between St. Paul and the Pacific coast, but were not crossing nor intending to cross this Burlington railroad. It is said that it owed this duty to its own passengers. Let the proposition be conceded. It owed this duty to its passengers to prevent injuries to them by a collision with crossing trains. It did not owe any such duty to them to protect them from collisions with trains which were not crossing the Northern Pacific Railroad, and the injury sustained in this case did not arise from such a crossing train. The incidental fact that the "Soo" train reached the north end of the Northern Pacific single track a few seconds earlier than it would have arrived if it had stopped for the Burlington crossing is too remote and inconsequential to make its failure to stop there a cause directly contributing to the actual collision with a train coming from the north. Every collision of a through train with persons, trains, and animals, on its way from St. Paul to the Pacific Coast over the connected rails of the Northern Pacific Company certainly could not be attributed lawfully to the fact that it failed to stop at some crossing in St. Paul on the ground that, if it had done so, it would not have arrived at the points of collision at the times when they occurred. And the failure of the "Soo" train to stop at the Burlington crossing in this case cannot be more reasonably held to be one of the direct causes of this accident. The statute invoked therefore was irrelevant to the issues in this case, it did not render evidence of the rea-

sonable care of the enginemen of the "Soo" Company inadmissible, and it must be laid aside.

Was the evidence of the habit or custom of the operators of similar Great Western trains over the same tracks under like circumstances competent testimony upon the issue of the reasonable care of the operators of the "Soo" train? The presumption was, as has already been said, that these operators were of ordinary intelligence and prudence. The best test of reasonable care in a given case is evidence of the degree of care which such persons commonly exercise under similar circumstances where such evidence is available. Hence, upon the question of negligence or none, evidence of the ordinary practice and of the uniform custom, if any, of such persons in the performance under similar circumstances of acts like those which are alleged to have been done negligently, is generally competent evidence, because it presents to the jury a correct standard for the determination of the issue. Lake v. Shenango Furnace Company, 160 Fed. 887, 895, 88 C. C. A. 69, 77; Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 416, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Union Pacific Ry. Co. v. Daniels, 152 U. S. 684, 691, 14 Sup. Ct. 756, 38 L. Ed. 597; Washington, etc., Ry. Co. v. McDade, 135 U. S. 554, 569, 10 Sup. Ct. 1044, 34 L. Ed. 235; Texas & Pacific R. Co. v. Barrett, 166 U. S. 617, 619, 620, 17 Sup. Ct. 707, 41 L. Ed. 1136; Choctaw, etc., R. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96; Charnock v. Texas & Pacific R. Co., 194 U. S. 432, 437, 24 Sup. Ct. 671, 48 L. Ed. 1057; Chicago Great Western Railway Co. v. Egan, 86 C. C. A. 230, 159 Fed. 40. There was no error in the admission of the testimony relative to the habit, the practice, or the custom of the Great Western operators while taking like trains under similar circumstances over the tracks here used by the "Soo" Company.

A single question remains. It is assigned as error that the court below denied the motion of the defendant at the close of the trial to dismiss the action on the ground that the evidence conclusively proved that the plaintiff was guilty of negligence which directly contributed to cause the collision and the losses. The question which this specification presents is not the issue of fact whether or not the finding of the court below that the "Soo" Company was not thus guilty was sustained by a fair preponderance of the evidence. It is this question of law: Was there conclusive proof that the "Soo" Company was guilty of causal negligence, and no substantial evidence that it was not so guilty, so that no issue of fact regarding this matter remained for determination? When an action at law has been tried by the court without a jury, its findings may not be reversed for any error of fact. Rev. St. U. S. §§ 649, 700, 1011 (U. S. Comp. St. 1901, pp. 525, 570, 715); Hall v. Houghton & Upp Mercantile Co., 60 Fed. 350, 8 C. C. A. 661. A finding of a court without a jury in an action at law has the same effect and is reviewable to the same extent and by the same course of procedure as the verdict of a jury, with the single exception that when the finding is special the question whether or not the facts found sustain the judgment is open to determination by the appellate court. United States Fidelity & G. Co. v. Board of Com'rs, 145 Fed. 144, 150, 151, 76 C. C. A. 114, and cases there cited; Hall v. Western Union Tele-

graph Co., 162 Fed. 657, 660, 89 C. C. A. 449; Hill v. Walker, 167 Fed. 241, 256, 92 C. C. A. 633.

The evidence which conditions the issue thus presented consists of the testimony of more than a dozen witnesses, and no good purpose would be served by a recital of it here. There was, it is true, testimony which, if it stood alone, would have sustained a finding of a failure of the fireman upon the "Soo" engine to exercise reasonable care to look out for signals and obstructions as he passed up the single track of the Northern Pacific Company. But there was also substantial evidence of these facts: There was a single track of the Chicago, St. Paul, Minneapolis & Omaha Railroad Company which crossed the double tracks of the Union Depot Company south of Third street, and there was an Omaha stopboard by the side of this double track about 700 feet southwest of the Third street viaduct at the point where the double tracks leading from the Union Depot began to curve from east to north. From that point to a point very near the passageway under the Third street viaduct the view of the engineer of the "Soo" train to the north was completely cut off by the embankment which supported Third street. There was a point just before his engine went under the viaduct where he could have seen to the north through that passageway; but as the engine passed under the bridge the smoke from it circled down and obscured his vision, and thereafter his view of the approaching Great Western train and of other objects to the northwest was obstructed by the boiler and the front end of the engine so that his opportunity to see that train and the situation in front of him north of Third street was practically open to him for an instant only, just before he passed beneath the viaduct. It is clear from the evidence here that no court could hold as a matter of law that the engineer was conclusively proved to have been guilty of causal negligence. The fireman could have seen the Great Western train as he approached it from a point near Third street and could have also seen the stop signals which the evidence shows Maloney, the switchman at the north end of the single track, was giving, if he had been looking out of his side of the engine. But it was the custom to run these trains over this single track upon the signals of the stationary switchman. McGuire had examined and seen that the switches at both ends of the single track were lined up for the passage of this train onto the double track of the Northern Pacific Company, and his signal to come on which these enginemen had received was authoritative notice to them that these tracks were ready for them and free from obstruction so that their train could pass safely over the single track. The fireman had received this signal at the Omaha stopboard 700 feet from the Third street bridge, and had given it to his engineer who drove his engine around the curve and up the hill. It was necessary and customary for the fireman on an engine drawing a heavy passenger train like that of the "Soo" Company around this curve and up this grade to get down from his seat in the engine, and feed, tend, and promote his fire immediately after the train started from the Omaha stopboard, so that steam sufficient might be produced to enable the engine to take the train up the hill. While he was discharging this necessary duty, he could not look out in front of the engine. As soon as the train started around the

curve, this fireman got down from his position in the cab, fed and tended his fire until the engine was about entering upon the double track at the north end of the single track, when his attention was first called by a visiting engineer, who was riding on the engine to learn the road, to the fact that the Great Western train was coming down the west one of the double tracks and was not likely to stop, and it was then too late for the engineer of the "Soo" Company to avoid the collision. There was evidence on the other hand that other firemen had completed their necessary firing and had been able to get up into the cab where they could look ahead by the time they arrived at Third street. But there was also evidence that the time and work required here varied with the weight of the trains and the condition of the fires in the engines, and the fireman upon this engine testified that he was engaged in attending to his fire until it was too late to avoid the collision.

It is only when the evidence upon the issue of negligence or of contributory negligence is so clear and conclusive that a finding but one way can be sustained upon it, that the question in issue becomes one of law and the duty devolves upon the court to effectuate that conclusion without weighing the evidence upon the issue. This case was tried by the judge whom the parties selected and whom they agreed should try it before the action was commenced. He saw and heard the witnesses and decided, upon consideration of the weight of all the evidence, that the enginemen of the "Soo" Company were not guilty of any negligence which directly contributed to the accident, and a review of the printed testimony has failed to convince that there was no substantial evidence to sustain his finding, or that it was his duty to disregard the question of fact upon a consideration of the sufficiency of the evidence and to direct a judgment for the defendant on the ground that there was no substantial conflict in the evidence upon this issue. There was, therefore, no error in the denial of the motion of the defendant to that effect.

Finally, counsel for the Great Western Company contend that the court below erred in including in its judgment against that company upon the facts found the amounts paid out on account of injuries to the passengers of the "Soo" Company. They support this contention by the argument that the "Soo" Company was guilty of some causal negligence, that if it was guilty of any negligence the passengers could have recovered their damages from it, and that after it had paid those damages it could not have recovered them of the Great Western Company, because the two companies were joint tort-feasors. But the court below found that the negligence of the Great Western Company was the sole proximate cause of the collision and of the injuries and damages which resulted from it, and that the "Soo" Company was not guilty of any negligence whatever which directly contributed to cause them. If those findings were right, and our review of the record has convinced that there was no error in the trial which can disturb them, the "Soo" Company was not liable to its passengers for the injuries and damages they sustained by this collision, and the contention of counsel here is without foundation.

The judgment below must be affirmed, and it is so ordered.