EDWARD A. STEVENS *vs.* CITY OF MINNEAPOLIS.

December 6, 1889.

**Expert Witness—Court to decide as to Qualification—Review on Appeal.**—Whether a witness offered as an expert possesses the requisite qualification is a question of fact to be decided by the trial judge, and his ruling will not be reversed unless it clearly appears that it was not justified by the evidence as presented to him at the time, or that it was based upon some erroneous view of legal principles.

**Same—Testimony as to Value, when not Conclusive.**—The opinions of experts as to the value of services, or anything not having a fixed and known market value, are not conclusive, but it is the province of the jury to weigh such testimony by reference to all the other facts and circumstances in evidence, and judge of the weight and force of such opinions by their own common sense and general knowledge of the subject of inquiry.

**Insufficient Assignment of Error.**—Where a motion for a new trial was made on two or more different grounds, an assignment of error, "that the court erred in denying the motion for a new trial," is insufficient.

Appeal by plaintiff from an order of the district court for Hennepin county, refusing a new trial after trial before *Young*, J., and verdict of $2,000—the amount claimed in the complaint being $6,924.

*Wilson & Lawrence*, for appellant.

*Robert D. Russell*, for respondent.

MITCHELL, J. This action was brought to recover the value of services rendered by plaintiff under a contract by which he was employed by defendant to compile, revise, annotate, index, and edit the city charter, together with all acts of the legislature relating to the city and its various public boards; also all ordinances and regulations of the city and its predecessors; and to prepare the same for press, and superintend the printing and publishing of the same in book form. This employment included the preparation, for presentation to the city council, of such new ordinances, and amendments to existing ordinances, as might be necessary to make them conform to

existing laws, or to put into one ordinance the provisions of a multiplicity of ordinances on the same subject. It involved, first, the adoption of a plan or system of compilation, and then an examination of all general and special laws affecting the city since the adoption of the original charter; also of the proceedings of the councils of the two cities, St. Anthony and Minneapolis, down to date, to ascertain what ordinances had been passed; making a summary of those, and noting which were repealed, and which were inconsistent with each other; also a preparation of a complete index of the whole compilation; and, finally, the supervision of the printing and publishing it in book form. The work, therefore, was to be a very thorough one,—not a mere compilation, but, also, at least so far as the ordinances were concerned, a revision. It also included what might be called the editing and publishing. Upon the trial the plaintiff explained to the jury at very great length, and in minute detail, the character and extent of the work; how he did it; the degree of skill and care it required; the difficulties in the way of its performance; and the length of time in hours it occupied him. He and another witness in his behalf were also allowed to testify as experts as to what, in their opinions, such services were worth by the hour. The evidence on part of the defendant consisted mainly of testimony tending to show that plaintiff was not occupied in the work as long or as steadily as he claimed; also testimony as to the salary or compensation usually paid to editors or others employed in making compilations and revisions of a somewhat similar character.

1. The most important question in the case is that raised by plaintiff's sixth, seventh, and eighth assignments of error, as to the rulings of the trial court in excluding the testimony of certain alleged experts, Merrick, Ripley, and Benton, as to what, in their opinions, plaintiff's services were reasonably worth by the hour. The rule determining the subjects upon which experts may testify, and the rule prescribing the qualifications of experts, are matters of law; but whether a witness offered as an expert has those qualifications is a question of fact to be decided by the court at the trial. *Jones* v. *Tucker*, 41 N. H. 546. Whether a witness offered as an expert possesses the requisite qualifications involves so much of the ele-

ment of fact that great consideration must necessarily be given to the decision of the trial judge; and his ruling will be sustained, unless it is made clearly to appear that it was based upon some erroneous view of legal principles, or that the ruling was not justified by the evidence as presented to the judge at the time. *Nunes* v. *Perry*, 113 Mass. 274; *Com.* v. *Sturtivant*, 117 Mass. 122; *Perkins* v. *Stickney*, 132 Mass. 217; *Spring Co.* v. *Edgar*, 99 U. S. 645; *City of Fort Wayne* v. *Coombs*, 107 Ind. 75, (7 N. E. Rep. 743;) *Castner* v. *Sliker*, 33 N. J. Law, 95; *McEwen* v. *Bigelow*, 40 Mich. 215; Lawson, Exp. Ev. 236. There is not, and, in the nature of things, cannot be, any exact legal standard by which to determine whether a proposed expert possesses the requisite qualifications. The trial judge has, in the exercise of a sound discretion, to pass upon it as a question of fact, and his decision should have the same weight given to it as upon any other question of fact, and ought not to be reversed except in a clear and strong case. *Sorg* v. *First German Congregation*, 63 Pa. St. 156; *Delaware, etc., Towboat Co.* v. *Starrs*, 69 Pa. St. 36. As was said by Cooley, J., in *McEwen* v. *Bigelow*, *supra:* "The court is not obliged to receive the evidence of every person called who may appear to have some little knowledge of the business, but who has no personal knowledge of the matters in controversy. He must decide, within the limits of a fair discretion, whether the experience of the supposed expert had been such as to make his opinions of any value."

Applying these rules to the present case we are unable to say that the court erred in excluding the evidence referred to. We take the case of the proposed expert Merrick, for it presents a stronger case for plaintiff than that of either Ripley or Benton. The proposed witness stated generally that he had knowledge of the nature and character of such work, and of what would be the fair and reasonable value of such services; but this amounted to nothing more, under the circumstances, than the opinion of the witness as to his own qualifications, which is wholly irrelevant. A witness cannot judge of his own qualification; that is a question for the court, to be determined upon the facts in evidence. *Boardman* v. *Woodman*, 47 N. H. 120; *Naughton* v. *Stagg*, 4 Mo. App. 271; *Mercer* v. *Vose*, 8 Jones & S. 218.

When we look for *facts* tending to prove his competency, we find them very meagre. He had been a practising attorney since 1857, but this would not qualify him to testify as to the value of such services. While it may be true that no one but a lawyer would be competent to make such a revision and compilation, yet such work is so entirely outside the ordinary duties of an attorney that he would know very little about it unless he had some experience in the same line of work. It also appeared that the witness had been once city attorney of Springfield, Mass., and afterwards, from 1872 to 1875, city attorney of Minneapolis; that while city attorney of Springfield he had made a *compilation* of the city ordinances, which were not numerous; that while city attorney of Minneapolis he made a compilation of the charter and ordinances, and drew such new ordinances as were directed by the city council, and as were needed; that this last work led him to an examination of all or nearly all the city ordinances at that time; that during the last year of his service as city attorney *some* preparation was made for a new compilation of the ordinances as they increased, which led him to make examination of the compilations of other cities. This was the extent of his experience. What was the precise character of the two jobs in which he had been thus engaged is not disclosed; but it is pretty apparent that they were different in nature, as well as extent, from the work of plaintiff, being merely compilations. He claimed no personal knowledge of plaintiff's services. It will also be observed that what experience he had was 14 or more years ago; and while from this experience he might have acquired a limited knowledge of the nature of such work, there was not a single *fact* in evidence tending to show that he had any knowledge whatever as to what was usually paid for such services. Under the circumstances, the witness' opinion as to their value would have been of very little weight; and while it might not have been error for the court to have admitted it for what it was worth, we cannot see in its rejection any abuse of that fair discretion which is always vested in trial judges in such cases. Most of what we have said with reference to Merrick applies with increased force to Ripley and Benton.

2. The only other question of any importance in the case is whether the verdict is justified by the evidence. The jury found in favor of

the plaintiff in the sum of $2,000, and it is contended that there was no evidence which justified them in placing the value of the services at so low a figure. This is predicated upon the alleged fact that the amount of the verdict is below the estimate of any expert who testified directly as to the value of plaintiff's services, taking as true his own testimony as to the length of time he was employed on the work. This contention is based upon an erroneous idea as to the weight to be given to the opinions of experts as to value in such cases. Evidence of this kind, although not usually of the most satisfactory character, is admitted for the purpose of aiding the jury in forming their estimate of value; and while it is not to be ignored by them, but is to be given such weight as it appears to be entitled to, yet it is not conclusive as a matter of law upon the question of value. It is the province of the jury to weigh such testimony by reference to the nature of the services, the time occupied in their performance, and other attending circumstances in evidence; and while they cannot act in any case, upon any particular fact material to its disposition, on their private knowledge, but should be governed by the evidence adduced, yet they may, and to act intelligently they must, judge of the weight and force of this opinion evidence by their own common sense and general knowledge of the subject of inquiry; and if, upon consideration of the entire testimony, and giving to each part the force to which it is entitled, they are satisfied that the estimates of value by the experts are excessive, they have a right to say so by their verdict. *Johnson* v. *Chicago, B. & N. R. Co.*, 37 Minn. 519, (35 N. W. Rep. 438;) *Patterson* v. *City of Boston*, 20 Pick. 159; *Murdock* v. *Sumner*, 22 Pick. 156; *Head* v. *Hargrave*, 105 U. S. 45. As was said in *Johnson* v. *Chicago, B. & N. R. Co.*, *supra*, there is a distinction between a case like the present and one where a witness testifies to the value of an article of a known and fixed market price, in which the testimony is really as to a *fact*, and not a mere matter of opinion. In the present case the jury had presented to them in evidence, with great particularity, the nature and extent of plaintiff's services, how they were performed, and the length of time they occupied. There was also some evidence tending to at least cast some doubt upon the accuracy of plaintiff's computation of the time he was occupied.

They also had before them the testimony of witnesses tending to show that the compensation usually paid to editors employed on revisions and compilations ranged from $50 to $200 per month. In view of all this, we are not warranted in saying that the evidence did not justify the verdict merely because it may fall below the estimate of value placed on plaintiff's services by any expert who testified directly upon that subject.

We have considered this question as if properly raised on this appeal, but, to avoid misapprehension hereafter in other cases, we call attention to the fact that there is no proper assignment of error. The only assignment by which it is sought to raise the question is "that the court erred in overruling the motion for a new trial." The motion for a new trial was made on two grounds: (1) That the verdict was not justified by the evidence. (2) Errors in law occurring at the trial, and excepted to by plaintiff. Under such circumstances, a general assignment that the court erred in denying the motion is wholly insufficient, as it does not indicate on which of the different grounds the appellant relies in assigning error in the action of the court. If the motion for a new trial was made exclusively on one ground, such a general assignment of error might in some cases sufficiently indicate the alleged error complained of; as, for example, when the motion was made exclusively on the ground of newly-discovered evidence, or that the evidence did not justify the verdict. On the other hand, if the motion was made on the ground of errors of law occurring at the trial, an assignment of error would not be sufficient unless it specified the particular errors of law relied on; and clearly, in no case on an appeal from an order *denying* a motion for a new trial, is such an assignment of error as is made here good where the motion was made on two or more grounds.

We have carefully considered all the other assignments of error, but find nothing in them that we deem worthy of any extended consideration, or that requires us to say anything more than that we do not consider them well founded.

Order affirmed.