### LILLIBRIDGE *v.* McCANN.

1. FIRES—ORIGIN—EVIDENCE—QUESTION FOR JURY.

    In an action for negligently setting a fire, the evidence showed that, just before the fire originated, defendant lighted his pipe, and went into a barn, where the fire started, and lay down in the midst of combustible material, and went to sleep; and that he stated that his pipe must have slipped from his mouth while he was asleep. *Held*, that there was evidence from which the jury might find that the fire caught from the pipe.

2. SAME—INFERENCE OF NEGLIGENCE.

    The jury may draw such inferences as common knowledge will suggest respecting negligence in lying down and going to sleep in a barn, upon hay or straw, with a lighted pipe in one's mouth.[1]

3. SAME—EFFECT OF SPREADING—LIABILITY OF ORIGINATOR.

    One who negligently sets fire to his building is, in the absence of any efficient intervening cause, liable for the consequences of the fire's spreading from his own building to that of another.

4. SAME—INTERVENING CAUSE—EXISTING WIND.

    A wind existing at the time a building is set on fire is not an intervening cause of the burning of another building to which the fire is carried.

Error to Ottawa; Padgham, J. Submitted April 20, 1898. Decided May 17, 1898.

Case by William J. Lillibridge against Orlando B. McCann for negligently causing the destruction of plaintiff's buildings by fire. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*George A. Farr*, for appellant.

*Cutcheon & Swarthout*, for appellee.

[1] The right of jurors to act on their own knowledge of the facts in issue or relevant thereto is the subject of annotation to the case of *State* v. *Gaymon*, (S. C.) 31 L. R. A. 489.

MONTGOMERY, J.   This is an action on the case for the destruction of plaintiff's house, barns, hay, and grain, orchard, and other property by fire claimed to have been caused by the negligence of the defendant.   The plaintiff and defendant were farmers living on opposite sides of a highway running east and west through the township of Wright, in Ottawa county.   The proofs tend to show that the defendant had a barn upon his premises on the south side of the highway, and abutting upon it, which on the 27th day of July, 1894, was filled with straw, hay, and other combustible material.   Over the floor on the south side was a scaffold some 6 feet above the floor, with straw and other things upon it.   Across the highway were the barns of the plaintiff, some 10 or 12 rods distant.   The barns were filled with hay, and some 20 acres of wheat was stacked near them.   The barns substantially joined. The dwelling was about 2 rods from the nearest barn.   On the 27th day of July, 1894, the weather was very hot, and a drought had prevailed for some time.   On that day the wind had risen with the sun, and had steadily blown from the direction of the sun, there being in the middle of the day quite a breeze.   This had occurred regularly for several days prior to July 27th.   At about 1 o'clock on the 27th, the wind came almost directly from the defendant's barn to those of the plaintiff.   After dinner, on the 27th day of July, 1894, and a little before 1 o'clock, the defendant lit his pipe, went into his barn, and lay down on the hay or straw on the scaffold over the floor, smoking.   He fell into a doze, the pipe fell into the straw, and, igniting it, set fire to the barn.   This fire was rapidly communicated to the premises of plaintiff, and his barns, with hay, grain, dwelling house, furniture, orchard, shade trees, fences, and personal property, to the value of nearly $3,000, were destroyed.   There was no contributory negligence on the part of the plaintiff.

When the plaintiff rested his case, counsel for the defendant moved that the court direct a verdict for the defendant, for the reason that the plaintiff had not by

his proofs shown a cause of action. Thereupon the court directed the jury to render a verdict for the defendant, for the reason that the negligence of the defendant was not the proximate cause of the injury.

It is argued in this court that there was no evidence that the origin of the fire was the defendant's pipe. The evidence does, however, show that the defendant admitted that he lighted his pipe, and went into the barn, and lay down in the midst of the combustible material, and went to sleep, and that he stated that he supposed that his pipe must have slipped from his mouth while he was asleep. While it is true that this mere expression of opinion would not be conclusive, we think the facts shown were such as to require the submission of the origin of the fire to the jury.

It is also insisted that there was no evidence of negligence. It is said that there is no evidence of the danger of going into a barn with a pipe lighted or unlighted; that there is no evidence of communicating fire from a lighted tobacco pipe to oat straw; and counsel cite as a parallel case *Wood* v. *Railway Co.*, 51 Wis. 196, in which the testimony was that a lamp was left burning in a building which took fire, and the court seems to have expressed the opinion that the origin of the fire rested in mere conjecture, although the conclusion of the court apparently rests upon the ground that the leaving of a lighted lamp in a house is not negligence. Without discussing the soundness of that case, we think the distinction between leaving a lighted lamp in a house, and lying down to smoke in the midst of straw or other combustibles, is obvious, and that it was competent for the jury to draw such inferences from the proven facts as common knowledge would suggest.

The meritorious question is, Was the defendant liable for the consequences of the fire spreading from his own building to that of the plaintiff, if the fire in defendant's building be found to have originated in consequence of his negligence? In the absence of an intervening cause, it

seems to us clear that the bare fact that the defendant may have suffered a loss of his own property through the same negligent act does not render him any the less liable to the plaintiff for a loss ensuing to him through that neglect. Whatever may have at one time been held under the statute (6 Anne, chap. 31, § 6) which provided that no action should be maintained against any person in whose house or chamber any fire should accidentally begin, that statute is not applicable here. The subsequent statute (14 Geo. III. chap. 78, § 86), which enlarges the statute of Anne, had received no judicial construction prior to the Revolution. Since then, however, it has been construed in *Filliter* v. *Phippard*, 11 Q. B. 347, and it is held not to include fires set or induced by negligence. See, also, 1 Smith, Lead. Cas. (8th Ed.) 501, 502; Ray, Neg. Imp. Dut. (Personal) 641; 2 Shear. & R. Neg. § 665; *McNally* v. *Colwell*, 91 Mich. 532 (30 Am. St. Rep. 494).

Was the defendant's negligence the proximate cause of the injury to the plaintiff? The question is not different than it would be if the building first fired through the defendant's negligence had belonged to a third person or the plaintiff. The question is whether the owner of a building taking fire from another building, which is set on fire through the negligence of another, has an action against that other for the injury. This question has received consideration by this court. In *Hoyt* v. *Jeffers*, 30 Mich. 199, Mr. Justice CHRISTIANCY, speaking for the court, said:

"If such other buildings are satisfactorily shown to have been actually burned by the fire of the Sherman House, caused by the negligence of the defendant, and especially if this was, under the circumstances, the natural and probable, as well as the actual, result of the fire so caused, and without any contributory negligence of the plaintiff, I can see no sound principle which can make the defendant's liability turn upon the question whether the buildings thus burned by the fire of the first were five, six, or fifty feet, or the one-hundredth part of an inch, from it. And though a building thus burned by the fire of the first might be at such a distance that its taking fire from the

first might not, *a priori*, have seemed possible, yet if it be satisfactorily shown that it did in fact thus take fire, without any negligence of the owner, and without the fault of some third party, which could properly be recognized as the proximate cause, and for which he could be held liable, the principle of justice or sound logic, if there be any, is very obscure, which can exempt the party through whose negligence the first building was burned from equal liability for the burning of the second. If it be said that this extent of liability might prove ruinous to the party through whose negligence the buildings were burned, it may be said, in reply, that, under such circumstances, it is better, and more in accordance with the relative rights of others, that he should be ruined by his negligence than that he should be allowed to ruin others who are innocent of all negligence or wrong."

See, also, Cooley, Torts, 590; *Delaware, etc., R. Co.* v. *Salmon*, 39 N. J. Law, 299 (23 Am. Rep. 214); *Perley* v. *Railroad Co.*, 98 Mass. 414 (96 Am. Dec. 645); *Milwaukee, etc., R. Co.* v. *Kellogg*, 94 U. S. 469.

Was the wind an intervening cause? The evidence tends to show that it was an existing condition at the very time the negligent act occurred, and did not constitute an intervening efficient cause. The fact that the consequences of the defendant's negligent act were more serious than would have followed under other more favorable conditions of the atmosphere does not relieve the defendant. *Hoyt* v. *Jeffers, supra;* 1 Shear. & R. Neg. § 30; *Fent* v. *Railway Co.*, 59 Ill. 349 (14 Am. Rep. 13); *Perley* v. *Railroad Co., supra.*

It was a question for the jury as to whether the consequences of the defendant's negligent act ought to have been foreseen; and this is but another statement of the proposition that negligence is the absence of such care as persons of ordinary prudence are expected to exercise under like circumstances. *Milwaukee, etc., R. Co.* v. *Kellogg, supra; Ross* v. *Township of Ionia*, 104 Mich. 320.

Judgment reversed, and new trial ordered.

The other Justices concurred.