## H. D. WILLIAMS COOPERAGE CO. v. HEADRICK.

(Circuit Court of Appeals, Eighth Circuit.   March 19, 1908.)

No. 2,676.

1. MASTER AND SERVANT—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—PROMISE
   TO PROVIDE SAFEGUARDS AGAINST RISKS.

   A servant had been at work tending an equalizer in a temporary stave
   mill, standing about 3 feet in front of it, for about a month.   Beneath the
   two saws were holes in the ground, which held about two bushels each,
   made to receive the sawdust and blocks which fell from the saws.   This
   was the usual way in which such mills and equalizers were constructed.
   It was the duty of another servant to clean these holes out when they be-
   came filled; but he neglected his duty, and they were frequently so full
   that the exact location of their edges was concealed by the sawdust and
   blocks, and this was their condition at the time of the accident.   The
   day before the accident the servant complained of the danger from this
   condition and from the exposed saws, and the master promised to keep
   the holes cleaned out and to make the saws safe.   On the next day, upon
   a signal to go to the barrel saw, the servant undertook to pass between
   a bench, which was 18 inches from the edge of one of the holes and 30
   inches from one of the equalizer saws, and that saw, stepped into one of
   the holes and the saw cut his foot.   He might have gone around the bench
   away from the holes with comparative safety by traveling about 8 feet
   farther.

   *Held*, the servant was guilty of contributory negligence that was fatal
   to his suit.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
   ant, §§ 706–709.]

2. SAME—DUTY OF MASTER DOES NOT REQUIRE HIM TO FURNISH NEWEST AND
   SAFEST APPLIANCES—LIMIT OF DUTY.

   The master is not required to supply or use the best, newest, or safest
   places, appliances, or methods of operation to secure the safety of his
   servants.

   The limit of his duty is to exercise ordinary care to supply reasonably
   safe places, appliances, and methods.

   The test of the full discharge of this duty is ordinary care to supply such
   places, appliances, and methods as persons of ordinary intelligence and
   prudence commonly furnish in like circumstances.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
   ant, §§ 172–174, 180–192.]

3. SAME—PROMISE OF MASTER UPON COMPLAINT DOES NOT RELIEVE SERVANT
   FROM DUTY TO EXERCISE ORDINARY CARE.

   The promise of a master, upon complaint by the servant of defects or
   risks in places, appliances, or methods, to remove them, or to provide
   safeguards against them, does not relieve the servant of his duty to exer-
   cise ordinary care to protect himself against them meanwhile.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
   ant, § 685.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern
District of Arkansas.

Ben F. Williamson, Thomas J. Gaughan, and John T. Sifford, for
plaintiff in error.

W. A. Oldfield and Charles F. Cole, for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS,
District Judge.

SANBORN, Circuit Judge. This was an action for damages for a personal injury. The negligence charged was the failure to box equalizer saws in a stave mill and to keep the holes beneath them free from sawdust and blocks. The defenses were a denial of the defendant's negligence, and an assumption of the risks and contributory negligence by the plaintiff. The plaintiff, a man about 35 years of age, was tending equalizer saws for the defendant in a temporary stave mill which had been set up in the country in the state of Arkansas, to operate from 40 to 60 days. One of these saws was fastened upon each end of a driven shaft, which was supported by timber about 10 inches above the ground. The saws were about 28 inches in diameter, and a hole had been dug under each, about 2 feet in depth and capable of holding about two bushels, for the purpose of receiving the sawdust and the ends of the blocks which fell from the saws. It was the duty of one Arnold, a servant of the defendant, to clean these holes out as often as they filled; but at the time of the injury they had become full, and the sawdust was scattered over them and over the adjoining ground, so that the exact location of their edges was not visible. It was the duty of the plaintiff to stand about 3 feet in front of these saws, take the bolts of timber as they came from the saws, place them on a bench or table at his side, which was about 12 feet long and 6 inches higher at the end near to the equalizer than it was at the far end, so that by giving the bolts a push he could send them along upon the bench to a point where the side sawyer could take them and put them upon the carriage of the barrel or drum saw. The foot of the bench near the equalizer was about 18 inches from the nearer edge of the hole beneath the nearer one of the equalizer saws and about 30 inches from that saw. The barrel saw was on the side of the bench. One of the duties of the plaintiff had been to leave his station at irregular intervals on a signal from the foreman, to go to the barrel saw and by pressing a timber against it to steady it. There were two ways for him to reach the place where he discharged the latter duty. One was to go around the bench, and the other was to go between the bench and the hole beneath the equalizer. The distance by the former route was about 14 feet and by the latter route about 6 feet. By the former route he went away from the equalizer saws and the holes beneath them, but passed between the far end of the bench and the barrel saw, which was about 18 inches distant from it; but there was no evidence that there was any danger and there was positive evidence that there was no danger in pursuing this way. By the latter route he passed between the end of the bench and the hole beneath the equalizer saw, the edge of which was invisible. The plaintiff thought he received a signal from the foreman to steady the barrel saw. He grasped the near end of the bench and started between it and the equalizer, along the 18 inches of ground between the bench and the hole, when he stepped into the hole under the nearer saw, and it cut his foot. He knew the holes were there, their size and their location, and he had been at work at the equalizer within 4 feet of them from some time in July until the 23d day of August, when he was injured; but at the time of the accident the sawdust and blocks rendered the edges of the holes invisible. On the day before the accident the plain-

tiff had told the defendant's foreman that he was going to quit. The latter had asked him to stay. The plaintiff had told him that if he would fix the saws safe for him to work, and see that the holes were kept cleaned out, he would continue to work. The foreman said, "All right," and the plaintiff "relied on his promise to fix it" and went to work the next day. The evidence was conclusive that temporary stave mills and the equalizers therein were commonly conducted and operated by ordinarily prudent mill owners in the vicinity of this mill in the same way that this mill and equalizer were constructed and operated, with open holes beneath the saws, and without any covering over them. Upon this state of facts the court, at the conclusion of the trial, denied a request to instruct the jury to return a verdict in favor of the defendant, and this ruling is assigned as error.

The master is not required to furnish the best, the safest, or the newest appliances or methods of operation, nor to adopt extraordinary or unusual safeguards against risks and dangers. The limit of his duty here is to exercise ordinary care to supply reasonably safe places, appliances, and methods. The test of his discharge of this duty is the exercise of ordinary care to supply such places, appliances, and methods as persons of ordinary intelligence and prudence commonly furnish in like circumstances. Washington, etc., R. R. Co. v. McDade, 135 U. S. 554, 570, 10 Sup. Ct. 1044, 34 L. Ed. 235; Southern Pacific Company v. Seley, 152 U. S. 145, 153, 14 Sup. Ct. 530, 38 L. Ed. 391; Mississippi River Logging Co. v. Schneider, 20 C. C. A. 390, 391, 74 Fed. 195, 196. Tried by this test, there was no negligence in the construction or operation of the stave mill, or of the equalizer saws, for the proof was plenary that they were constructed and operated in the way commonly adopted by ordinarily prudent owners of mills under similar circumstances.

But counsel rely on the promise of the defendant to keep the holes clear of sawdust and blocks and to make the saws safe. Whether or not such a promise to protect against the ordinary risks incident to the business, which are not the effects of any negligence of the master, relieves the servant from his assumption of those risks, it is unnecessary to consider in this case, because in any event it does not relieve him from his duty to exercise ordinary care to protect himself from them. A promise by a master to remove defects, or to protect against risks or dangers, of which a servant has complained, does not relieve the latter of his duty to exercise ordinary care to protect himself against them. District of Columbia v. McElligott, 117 U. S. 621, 6 Sup. Ct. 884, 29 L. Ed. 946; St. Louis Cordage Co. v. Miller, 61 C. C. A. 477, 483, 126 Fed. 495, 501, 63 L. R. A. 551; Crookston Lumber Co. v. Boutin, 79 C. C. A. 368, 372, 149 Fed. 680, 684. The defendant knew the existence, the size, and the location of the holes. He knew that if he permitted his foot to fall into one of them there was imminent danger that it would come in contact with the revolving saw and be seriously injured. He knew that the sawdust and the blocks so filled the hole that its edges were not perceptible to the eye, and this knowledge that his eyes were useless for the purpose of protecting him from this danger imposed upon him the duty to use his other senses more actively and persistently to protect himself against

the hole and the revolving saw therein. He appreciated the risk and the danger of this situation; for he had complained of it the day before, and had obtained the promise of protection, which he knew had not been fulfilled. In this state of facts he owed to his master, as well as to himself, the duty to exercise ordinary care to use that degree of watchfulness which an ordinarily prudent person of his capacity and experience would exercise under like circumstances to protect himself against the obvious risks and dangers of which he complained. That duty required him to use the faculties which would protect him; to use his judgment and his reason, since his sight and his hearing were useless here, and by their use to exercise ordinary care to keep himself away from the hole and to avoid contact with the saw. When he received the signal there were two ways in which he could have answered it—one, around the bench away from the holes and the equalizer; the other, between the bench and the equalizer, along the narrow strip of earth, 18 inches in width, covered with sawdust, which concealed the edge of the hole. The former route was comparatively safe; the latter, comparatively dangerous. Where there is a comparatively safe and a more dangerous way known to a servant by means of which he may discharge his duty, it is a want of ordinary care for him to select and use the more dangerous method. Gilbert v. Burlington, C. R. & N. R. R. Co., 128 Fed. 529, 534, 63 C. C. A. 27, 32; Morris v. Duluth, S. S. & A. Ry. Co., 108 Fed. 747, 749, 47 C. C. A. 661, 664; Gowen v. Harley, 56 Fed. 973, 983, 6 C. C. A. 190, 200; Coal Co. v. Reid, 85 Fed. 914, 29 C. C. A. 475; McCain v. Railroad Co., 76 Fed. 125, 126, 22 C. C. A. 99, 101; Russell v. Tillotson, 140 Mass. 201, 4 N. E. 231; Gleason v. Railway Co., 73 Fed. 647, 19 C. C. A. 636; Cunningham v. Railway Co. (C. C.) 17 Fed. 882; English v. Railway Co. (C. C.) 24 Fed. 906. He pursued the more dangerous way and thoughtlessly stepped into the hole, brought his foot in contact with the saw, and thereby caused an injury which would not otherwise have happened. His knowledge of the place and its risks, and his appreciation of the risk and danger to which he exposed himself unnecessarily were as great as, probably they were greater than, those of his master, and they imposed upon him the duty to exercise as high, if not a higher, degree of care than that which was required of his master to protect himself therefrom, and there is no escape from the conclusion that, if the master was negligent, the servant was as much so. If he had not thoughtlessly walked into the hole, he would not have sustained the injury; and the court below should have instructed the jury to return a verdict in favor of the defendant. Where the evidence at the close of a trial so clearly discloses the fact that the plaintiff was guilty of negligence, which directly contributed to his injury, that a finding to the contrary cannot be sustained, it is the duty of the trial court to instruct the jury to return a verdict for the defendant. Gilbert v. Burlington, C. R. & N. R. R. Co., 128 Fed. 529, 532, 63 C. C. A. 27, 30, and cases there cited.

The judgment below must be reversed, and the case must be remanded to the court below, with instructions to grant a new trial; and it is so ordered.