CHICAGO, M. & ST. P. RY. CO. v. MOORE.

(Circuit Court of Appeals, Eighth Circuit. January 7, 1909.)

No. 2,795.

1. TRIAL (§ 311*)—DELIBERATIONS OF JURY—MATTERS OF COMMON KNOWLEDGE—JURY'S OBSERVATION AND EXPERIENCE.

In trials by jury, the jurors are not restricted to a consideration of the facts directly proven, but may give effect to such inferences as reasonably may be drawn from them. Nor are they expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 739; Dec. Dig. § 311.*]

2. TRIAL (§ 311*)—DELIBERATIONS OF JURY—OPINIONS OF EXPERTS—JURY'S OBSERVATION AND EXPERIENCE.

In respect of questions upon which men of ordinary observation and experience have some practical knowledge and are not incapable of forming opinions of their own, jurors are not dependent upon the opinions of experts, even though they would be assisted by them.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 311.*]

3. NEGLIGENCE (§ 5*)—STANDARD OF REASONABLE CARE—PRACTICE OF OTHERS.

The ultimate and controlling test of the exercise of reasonable care is, not what has been the practice of others in like situations, but what a reasonably prudent person would ordinarily have done in such a situation; and the practice of others is evidence, but not the sole evidence, of that test.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 7; Dec. Dig. § 5.*]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

M. B. Webber (Edward Lees, on the brief), for plaintiff in error.

L. L. Brown (W. D. Abbott and S. H. Somsen, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and AMIDON, District Judge.

VAN DEVANTER, Circuit Judge. This was an action for personal injuries sustained by the plaintiff through a falling of the boom of a derrick or loading jack which he and other servants of the defendant were using in hoisting steel rails from the ground to a flat car. The derrick was securely mounted upon the near end of an ad-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

joining flat car, and its principal parts were a vertical iron mast of considerable size, a boom extending upward at an angle from the base of the mast, and a guy rod connecting the top of the mast with the boom and supporting the latter. At the top of the mast was a shoulder, and projecting above that was a spindle 2 or 3 inches high and 1¾ inches in diameter. An eye or hole in the end of the guy rod fitted over the spindle, and above the eye was a flat washer. Above the washer was a hole in the spindle three-eighths of an inch in diameter, into which it was designed that a pin or key should be inserted of sufficient strength and size to hold the guy rod in place; that is, to keep it from being pulled, or slipping, off the spindle. The length of the boom was between 13 and 15 feet. the length of the guy rod was about 8 feet, and the height of the mast about 8 feet. The connection of the guy rod with the boom was enough higher than its connection with the mast to make its inclination about 35 degrees from the horizontal. The boom with its attachments was of such weight that the combined strength of five or six men was required in lifting it, and the weight of each rail to be hoisted was 800 pounds. In use the upper end of the boom, from which a cable was suspended, was swung around to the side, and the cable was fastened to a rail. The cable was then moved upward, thereby lifting the rail, and the boom was swung back over the car upon which the rail was to be placed. While the derrick was being so used, and while the plaintiff in the proper discharge of his duties was guiding a rail to its proper place upon the car, the pin or key at the top of the mast gave way, the guy rod was pulled off the spindle, and the boom fell, striking the plaintiff and inflicting injuries upon him which were and are painful, serious, and permanent. The negligence charged in the complaint, omitting what has since become immaterial, was that the defendant carelessly and negligently provided and placed in the hole in the spindle at the top of the mast a pin or key which was not of sufficient strength or size to withstand the strain to which it would be subjected in the service in which the derrick was to be used. This and all other negligence on the part of the defendant was denied in the answer, but it was admitted therein that the defendant used the derrick in the service described, that the plaintiff was injured by the falling of the boom while the derrick was being so used, and that he was then in the discharge of his duties as a laborer in the defendant's service. Upon the trial, which was to the court and a jury, the evidence produced by the plaintiff, in addition to proving the facts before stated, also proved, or tended substantially to do so, that the derrick had been used as here described "off and on" for seven or eight months; that on the occasion in question it was being used in the customary way, nothing unusual occurring in that regard; that after the accident the head and point of a twenty-penny wire nail were found near the base of the mast, the point being pronouncedly bent, and another part of such a nail was taken out of the hole in the spindle; that in size and otherwise the three pieces appeared to be parts of the same nail; that all were rusty upon the exterior, and at one place of severance the ends were bright, while at the other they showed a rusty break extending partly through the nail and were otherwise bright;

and that the pin by which the guy rod was to be held in place on the spindle "was not supposed to be a nail—it was supposed to be a key." The part of the nail taken out of the hole in the spindle was preserved, was produced in evidence, and has been transmitted to this court as part of the record. It is three-sixteenths of an inch in diameter, or just one-half the diameter of the hole from which it was taken, is 1¾ inches in length, or just the diameter of the spindle, is made of soft steel such as is commonly used in wire nails, and appears to have been cut or ground off at one end and partially severed in that way at the other, an old break completing the severance; but it does not appear to have been appreciably worn or reduced in size between its ends. Some of the witnesses spoke of seeing this part of the nail "driven out" of the hole in the spindle, but this cannot be taken as meaning more than that it was poked out, for the same witnesses said that it "came right out" and that the hole "was larger than" the nail. There was no evidence of how long the nail had been in the spindle, save such as was afforded by its rusty condition; nor was there any evidence of the amount of strain to which it was subjected, or of its sufficiency in strength and size, save such as was afforded by the description of the derrick, its several parts and the mode of operating it, by the weight of the boom and the rails to be hoisted, and by the part of the nail produced in evidence. The defendant produced no evidence, and the case was submitted to the jury upon these questions, among others: Did the defendant exercise ordinary care to provide a pin or key of sufficient strength and size to make the connection between the guy rod and the top of the mast reasonably safe when the derrick was in use? And, if not, what sum would fairly and reasonably compensate the plaintiff for the injuries inflicted upon him by the consequent falling of the boom? Other charges of negligence were also submitted to the jury, but they, as also what was said about them in the charge, have become immaterial, because, at the request of the defendant, the court submitted to the jury the special interrogatory, "What was the immediate cause of the falling of the boom?" to which the jury returned the answer, "The insufficient strength and size of the pin or key," meaning, as the record fairly discloses, that the nail was not of sufficient strength and size to be used as a pin or key. The verdict and judgment were for the plaintiff, and the defendant prosecutes this writ of error.

Preliminarily, it should be said that the court rightly charged the jury that there could be no recovery by the plaintiff unless the defendant was guilty of some of the negligence charged, that the burden of proving such negligence was upon the plaintiff, that no inference or imputation of negligence could arise out of the fact that the pin gave way on the occasion in question, that the defendant was not bound absolutely to provide a safe pin, but only to exercise ordinary care to provide a reasonably safe one, and:

"Mark you, that the claim of negligence is that this pin which held that rod, which ran from the end of the boom to the top of the mast, was of insufficient size and strength to withstand the strain which would naturally be brought against it in the lifting of the rail from the ground to the car. This is the first claim of negligence. Now, gentlemen of the jury, you have heard

the evidence as to the size of that pin, as to the character of that apparatus, and as to the way in which the work was done; and the first question for you to ask yourselves when you get to the jury room is this: Did the defendant company exercise ordinary care in the furnishing of that apparatus as to the pin? Would an ordinarily prudent man have furnished an apparatus with a pin of that size and strength to do that work? Or would an ordinarily prudent man have said, that pin is not of sufficient size and strength to stand the strain which will naturally be brought against it by the lifting of these rails? If in answering that question, you say that an ordinarily prudent man would have said that the pin was not of sufficient size and strength to withstand that strain, then the defendant company has been guilty of negligence in furnishing the derrick with that pin on top of the mast; that is, if you say that an ordinarily prudent man, performing the duty of furnishing a reasonably safe appliance, would have said that that pin would not be reasonably safe, considering the work that the apparatus had to do, and the strain which would be brought upon it, then the defendant would be guilty of negligence in furnishing the derrick with that pin.

"You must be satisfied that the necessary facts have been proved here by a fair preponderance of the evidence before there can be any recovery. You must not speculate; it must not be a matter of speculation or of guess; but you must be satisfied in your own minds by a fair preponderance of the evidence of these facts which it is essential should be established in order to entitle the plaintiff to recover. If you are not so satisfied, it is not for you to speculate, as to how this accident happened. You must find out how it did happen; and then, after finding out how it did happen, if you are satisfied, under the instructions I have given you, that the defendant was negligent, * * * you will ascertain what the plaintiff should recover."

In various ways the defendant objected that there was no evidence to justify a finding that the pin was not of sufficient strength and size, and the principal question now to be considered is whether these objections were well taken. The contention is that there was no evidence from which the jury could determine the character of the pin required, the strength of the pin used, or the amount of strain to which it was subjected, and, therefore, that they could not say that the pin was insufficient without going outside the evidence and indulging in mere conjecture. At the same time the admission is actually or tacitly made that, if an expert in mechanics or in the construction and operation of appliances like the derrick in question had also given testimony to the effect that the pin used was not sufficient to withstand the strain placed upon it in the hoisting of the rails, the question of its sufficiency should have been submitted to the jury.

It must be conceded that the case made by the evidence is close to the line which marks the separation of evidence from conjecture, but can it be said, upon a careful consideration of all that the proofs tended to establish, that it is on the forbidden side of the line? Of course, jurors are not restricted to a consideration of the facts directly proven, but may give effect to such inferences as reasonably may be drawn from them. Nor are they expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct. Thayer's Treatise on Evidence, 194, 263, 277, 296; Railroad Co. v. Stout, 17 Wall. 657, 663, 664, 21 L. Ed. 745; Head v. Hargrave, 105 U. S. 45, 49, 26 L. Ed. 1028; The Conqueror, 166 U. S. 110, 131, 17 Sup. Ct. 510, 41 L. Ed. 937; Bank

of Kentucky v. Adams Express Co., 93 U. S. 174, 185, 23 L. Ed. 872; Phillips v. Detroit, 111 U. S. 604, 606, 4 Sup. Ct. 580, 28 L. Ed. 532; Jacobson v. Massachusetts, 197 U. S. 11, 30, 25 Sup. Ct. 358, 49 L. Ed. 643; McLean v. Denver & Rio Grande R. R. Co., 203 U. S. 38, 51, 27 Sup. Ct. 1, 51 L. Ed. 78; McNichols v. Pease, 207 U. S. 100, 111, 28 Sup. Ct. 58, 52 L. Ed. 121; Lafayette Bridge Co. v. Olsen, 47 C. C. A. 367, 371, 108 Fed. 335, 54 L. R. A. 33; Nyback v. Champagne Lumber Co., 48 C. C. A. 632, 638, 109 Fed. 732; Baker v. F. A. Duncombe Mfg. Co., 77 C. C. A. 234, 146 Fed. 744; The Queen v. Aspinall. L. R. 2 Q. B. Div. 48, 61; Patterson v. Boston, 20 Pick. (Mass.) 159, 166; Commonwealth v. Peckham, 2 Gray (Mass.) 514; Bradford v. Cunard Steamship Co., 147 Mass. 55, 16 N. E. 719; McGarrahan v. Railroad, 171 Mass. 211, 217, 220, 50 N. E. 610; Kitzinger v. Sanborn, 70 Ill. 146, 149; Chicago, etc., Co. v. Warner, 108 Ill. 538, 546; Stevens v. Minneapolis, 42 Minn. 136, 140, 43 N. W. 842; Taylor v. Grand Lodge, 101 Minn. 72, 77, 111 N. W. 919, 11 L. R. A. (N. S.) 92, 118 Am. St. Rep. 606; Lake Shore, etc., Co. v. Miller, 25 Mich. 274, 292; Lillibridge v. McCann, 117 Mich. 84, 75 N. W. 288. 41 L. R. A. 381, 72 Am. St. Rep. 553; White v. Ins. Co., 83 Me. 279, 22 Atl. 167; State v. Maine Cent. R. R. Co., 86 Me. 309, 312, 29 Atl. 1086; Jamieson v. Gas Co., 128 Ind. 555, 563, 28 N. E. 76, 12 L. R. A. 652; Baker v. Hope, 49 Cal. 598; Swain v. Street R. R. Co., 93 Cal. 179, 28 Pac. 829; Post v. Chicago, etc., Co., 121 Mo. App. 562, 97 S. W. 233; Ayer & Lord Tie Co. v. Keown, 93 S. W. 588, 29 Ky. Law Rep. 400. As has been seen, the boom and the load which it was designed to lift were exceedingly heavy, and the boom was supported in its oblique position solely by the guy rod, whose downward inclination toward the mast was about 35 degrees from the horizontal. Therefore, the uplift of the rod at its connection with the mast must have been pronounced, and must have subjected the pin, by which the rod was held in place upon the spindle, to a corresponding strain. As the derrick was constructed, the hole in the spindle was made three-eighths of an inch in diameter, and that gave rise to a permissible inference that it was designed that the pin should be of substantially that size. The nail used as a pin, but "not supposed" to be so used, was only one-half the diameter of the hole, and its strength was affected accordingly. Besides, it was made of a soft quality of steel, which materially increased its susceptibility to the cutting or grinding action incident to the uplift and movement of the rod. True, no mechanical expert gave his opinion upon the character of pin required, the strength of the nail used, or the amount of strain to which it was subjected, but upon those questions the jurors were not incapable of forming opinions of their own. Being men of ordinary observation and experience, they must have possessed some practical knowledge of the law of gravitation, of the elementary principles of mechanics, of the common use of pins in holding the wheels of various vehicles in place upon their spindles and in holding together different parts of other appliances and machinery, of the quality, strength, and size of those pins, and of the relative quality, strength, and size of twenty-penny wire nails. Doubtless they would

have been assisted by the opinions of competent experts, but they were not wholly dependent upon them (Head v. Hargrave, The Conqueror, Lafayette Bridge Co. v. Olsen, Nyback v. Champagne Lumber Co., McGarrahan v. Railroad, and Stevens v. Minneapolis, supra), and so it cannot be said that there was no substantial evidence from which the jury could find that the nail, so used as a pin, was insufficient in strength and size.

But it is urged that the evidence made such a finding inadmissible, because it conclusively proved that the nail had been used as a pin for seven or eight months, during which it was shown to be quite adequate to the strain put upon it. The record does not sustain the contention. How long the nail had been used as a pin was not shown, save as its rusty condition may have warranted an inference that it had been in the spindle, with the incident exposure to the weather, for some time. At most that would have been only a permissible inference to be drawn by the jury, and not a necessary or conclusive one, because the nail may have been rusty when it was placed in the spindle. And for another reason the asserted proof of demonstrated adequacy was not conclusive. It consisted of statements that the derrick was used "off and on" from early in March until late in October following, that it was taken out on the road at times and then returned, that it was not in use all the time, but only occasionally, and that the extent of its use from early in June until late in October, so far as known by one of the crew, was seven or eight days. But there was no proof that during the periods of use, whatever they may have been, the nail was not appreciably yielding to the cutting or grinding action, indicated by the ends of its severed parts, which was incident to the uplift of the guy rod and the swinging of the boom from side to side when the derrick was in use.

It is also urged that such a finding was inadmissible, because there was no evidence of what pins were used by other owners and operators of like derricks. The contention must fail, because it proceeds upon a theory which gives undue and controlling influence to the conduct of others. Without question it would have been permissible to show what pins were used by other owners and operators of like derricks, for that would have been some evidence of what could have been, and ought to have been, done by the defendant; but evidence of that character was not indispensable, because the ultimate and controlling test of the exercise of reasonable care is, not what has been the practice of others in like situations, but what a reasonably prudent person would ordinarily have done in such a situation. The law is not so unreasonable as to afford no test where there has been no practice by others with which the conduct in question can be compared; nor does it permit common sense and reason to lose their sway because, through ignorance, inattention, or selfishness, an unreasonable practice has prevailed. Chicago Great Western Ry. Co. v. McDonough (C. C. A.) 161 Fed. 657, 665, and authorities there cited; Nyback v. Champagne Lumber Co., 48 C. C. A. 632, 638, 109 Fed. 732; Dawson v. Chicago, R. I. & P. Ry. Co., 52 C. C. A. 286, 288, 114 Fed. 870; Gilbert v. Burlington, C. R. & N. Ry. Co., 63 C. C. A. 27, 32, 128 Fed. 529; 1 Labatt, Master and Servant, § 50.

Exceptions were taken to portions of the charge in respect of the assessment of damages and other matters, but none of them affords any ground for a reversal. Some were addressed to excerpts which standing alone might be subject to criticism, but taken with the context, and as they must have been understood by the jury, were unobjectionable; some were rendered immaterial by the jury's answer to the special interrogatory; and the others were plainly without merit.

It follows that the judgment should be affirmed, and it is so ordered.

SANBORN, Circuit Judge (concurring). This case involves the liability of the master for the breach of its duty to its servant to exercise ordinary care and prudence in the selection, arrangement, and care of a simple machine which it furnished. In my opinion this liability is measured by the following rules of law which I think have been established by decisions of the Supreme Court and of this court.

The limit of the duty and of the liability of the master is the exercise of ordinary care to furnish and keep in repair reasonably safe machinery. That duty is discharged and that liability ceases when the master has exercised ordinary care to furnish such machinery and appliances as persons of ordinary intelligence, prudence, and caution commonly supply under like circumstances. Washington, etc., Ry. Co. v. McDade, 135 U. S. 554, 570, 10 Sup. Ct. 1044, 34 L. Ed. 235; Southern Pacific Company v. Seley, 152 U. S. 145, 153, 14 Sup. Ct. 530, 38 L. Ed. 391; Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 664, 21 Sup. Ct. 275, 45 L. Ed. 361; Mississippi River Logging Co. v. Schneider, 20 C. C. A. 390, 393, 74 Fed. 195, 198; H. D. Williams Cooperage Co. v. Headrick, 159 Fed. 680, 682, 86 C. C. A. 548, 550. "The defendant was not a guarantor of the safety of its machinery, and was only bound to use ordinary care and prudence in the selection, arrangement, and care thereof, and had a right to use and employ such as the experience of trade and manufacture sanctioned. * * * Neither individuals nor corporations are bound as employers to insure the absolute safety of the machinery or mechanical appliances which they provide for the use of their employés, nor are they bound to supply the best, the safest, or newest of those appliances for the purpose of securing the safety of those who are thus employed." Washington, etc., Ry. Co. v. McDade, 135 U. S. 554, 569, 570, 10 Sup. Ct. 1044, 1049, 34 L. Ed. 235.

The true test of ordinary care is that degree of care which persons of ordinary intelligence and prudence commonly exercise under similar circumstances. If the care used in a given case rises to or above that standard, there is no actionable negligence; if it falls below it, there is such negligence. Union Pacific Railroad Co. v. Daniels, 152 U. S. 684, 691, 14 Sup. Ct. 756, 38 L. Ed. 597; Southern Pacific Co. v. Hetzer, 68 C. C. A. 26, 35, 135 Fed. 272, 281, 1 L. R. A. (N. S.) 288; Chicago Great Western Ry. Co. v. Egan, 159 Fed. 40, 45, 86 C. C. A. 230, 235; H. D. Williams Cooperage Co. v. Headrick, 159 Fed. 680, 682, 86 C. C. A. 548, 550; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 416, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Washington, etc., Ry. Co. v. McDade, 135 U. S. 554, 569, 10 Sup. Ct. 1044, 34

L. Ed. 235; Choctaw, etc., Ry. Co. v. Holloway, 191 U. S. 334, 338, 24 Sup. Ct. 102, 48 L. Ed. 207; Choctaw, etc., Ry. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96; Charnock v. Texas & Pacific Ry. Co., 194 U. S. 432, 437, 24 Sup. Ct. 671, 48 L. Ed. 1057. In Union Pacific Railroad Company v. Daniels, 152 U. S. 684, 691, 14 Sup. Ct. 756, 758, 38 L. Ed. 597, a case which involved the duty to exercise care to furnish reasonably safe machinery for the servant, the Supreme Court sustained this charge:

"The duty of the defendant towards him was the exercise of reasonable care in furnishing and keeping its machinery and appliances, about which he is required to perform his work, in a reasonably safe condition. It was the defendant's duty also to use like ordinary care in selecting competent fellow servants and in a sufficient number to insure that the work would be safely done; and this duty was discharged by the defendant if the care disclosed by it in these several matters accorded with that reasonable skill and prudence and care which careful, prudent men, engaged in the same kind of business, ordinarily exercise."

I do not assent to any direct or indirect departure from these rules. While it may be theoretically true that the measure of care required of a master is that which an ordinarily prudent man would have used under like circumstances, the best evidence what that degree of care was and the true standard of its measurement is the degree of care which ordinarily prudent, cautious, and rational employers ordinarily exercise under like circumstances. Where there is substantial and undisputed evidence what degree of care such employers commonly exercised in similar circumstances, and no evidence that the master failed to exercise that degree of care, it is not in my opinion permissible for the jury to speculate or opine that a reasonably prudent man would have exercised a higher degree of care than such men actually did exercise, and to charge the defendant with damages because he failed to reach such a speculative, variant, and uncertain standard. Southern Pacific Co. v. Hetzer, 135 Fed. 272, 68 C. C. A. 26, 35, 1 L. R. A. (N. S.) 288; Chicago Great Western Ry. Co. v. Egan, 159 Fed. 40, 45, 86 C. C. A. 230.

In the case at bar, however, there was no evidence what degree of care ordinarily cautious, prudent, and rational employers commonly exercise in the selection and care of such a machine as that in use at the time of the accident; and upon the ground that in the absence of such evidence, and in view of the proof of the size of the pin and of the size of the hole in which it was placed, of the character of the machine and of its work, I do not dissent from the conclusion that it was permissible for the jury in this case to find what degree of care an ordinarily prudent man would have exercised under like circumstances, and that the defendant failed to use that care.