## PIERSON v. CHICAGO, R. I. & P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. April 26, 1909.)

### No. 2,859.

MASTER AND SERVANT (§ 96*)—MASTER'S LIABILITY FOR INJURY TO SERVANT —NEGLIGENCE OF THIRD PERSON.

Plaintiff was employed by defendant railroad company as a boiler maker's helper, and worked at a roundhouse to which an addition was being built by an independent contractor. At a time when the new part was nearly completed and in use, and plaintiff was working therein, he was injured as he was about to enter one of the doors. The evidence did not show directly the cause of injury, but tended to show that he was struck by a brick swept from the roof by one of the contractor's employés. Held, that defendant was not liable on the ground that it had failed to provide plaintiff with a reasonably safe place to work; the place itself being safe, and the injury having been caused by an act of negligence of one over whom it had no control, and which it had no reason to anticipate.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 96.*]

In Error to the Circuit Court of the United States for the District of Kansas.

Joseph E. Waters (John C. Waters, on the brief), for plaintiff in error.

Paul E. Walker (M. A. Low, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. The plaintiff in error was the plaintiff in the Circuit Court, the defendant in error was the defendant in the Circuit Court, and the parties will be hereafter referred to as plaintiff and defendant, respectively.

This action to recover damages for personal injuries was brought in the state court, and removed to the Circuit Court by the defendant. At the conclusion of the evidence the court instructed the jury to return a verdict for the defendant, and this action of the court is assigned for error.

The record shows that on the 15th of January, 1906, the plaintiff was employed as a boiler maker's helper in the shops of the defendant, at Horton, Kan.; that he had been in the employ of the defendant at its shops for about six years, and for the last three years preceding the injuries which he alleged he received on the 15th of January, 1906, he had been working as a boiler maker's helper; that his work was entirely about the engines after they had been brought into the roundhouse at the end of a run. At the time the plaintiff received the injuries for which he seeks to recover damages, the roundhouse at Horton was being enlarged by constructing an addition thereto. The work of constructing the addition to the roundhouse had been let to a contractor by the name of Fellows. The contractor had no relations whatever with the defendant other than his contract for the construction of this addition. Neither the defendant nor any of its employés had any supervision, control, or direction over the work or the men employed by the contractor. During the construction of this addition the defendant used the roundhouse as originally constructed, and also the new portion as fast as the work had progressed far enough for it to do so.

The evidence shows that for about a week prior to the 15th of January, the employés of the contractor had been engaged in laying the roof on the new part of the roundhouse, and during that time discarded pieces of material would occasionally fall to the ground; that this was not of frequent occurrence, and was not known to the foreman in charge of the shops; that the laying of the roof had, a day or two prior to the injury to the plaintiff, been completed, except sawing off uneven projecting ends of the roof at the eaves; that on the morning of the 15th of January some of the employés of the contractor went upon the roof for the purpose of sawing off these projecting ends; that there was some snow on the roof which had fallen the night before, and also some débris, consisting of pieces of boards, broken bricks, and a few whole bricks. In order that they might run a chalk line to guide those employed in sawing off the uneven ends,

the foreman of the contractor ordered two of the men under him to sweep off the roof, and, while they were engaged in this work, plaintiff and his superior, a boiler maker, were working on an engine in the roundhouse; that it was found necessary, in the performance of their work, to use an air hose, and they both left the roundhouse in search of one; that as the plaintiff was returning to the roundhouse, and when about six or eight feet from one of the doors, he was seen to rise on his toes and fall forward, striking his head against the rail of a track leading into the roundhouse. When picked up he was unconscious, and there was a wound on his head. No one saw anything strike plaintiff. Plaintiff himself testified that he did not know how the accident happened, and did not know that anything struck him, aside from the fact that there was a wound on his head. There was evidence, however, tending to show that there was a blood spot upon the snow at the place where he fell, and that a brick was found at that place which seemed to fit a dent in the hat worn by the plaintiff at the time he was injured. This, taken in connection with the fact that men were at the time engaged in removing the débris and snow from the roof, and that this débris consisted in part of bricks and pieces of bricks left on the roof by the masons who had been repairing the fire wall after the roof was laid, tends to support the contention of the plaintiff that in cleaning off the roof the men engaged in that work had swept a brick from the roof which struck plaintiff upon the head and caused his injuries.

A recovery is sought in this case upon the ground that the defendant had failed to provide plaintiff with a reasonably safe place to work, and that this was a positive duty upon the part of the master which could not be delegated to another.

While it is undoubtedly the duty of the master to exercise ordinary care to provide the servant with a reasonably safe place in which to work, and that this is a positive personal duty which the master cannot delegate to another, yet we are unable to perceive the application of this rule to the facts in this case. The undisputed testimony is that the construction of the new part of this roundhouse was under the exclusive charge of Fellows, an independent contractor; that the defendant had no direction, supervision, or control over him, the method of construction, or the workmen engaged by him to perform the work. The plaintiff was employed to assist the boiler maker in repairing engines in the roundhouse, and it is not contended that that place was unsafe. He had been employed there continuously from the time the work of construction commenced upon this addition, and was necessarily as familiar as any one with the manner in which the work was being carried on. It is not contended that the defendant knew that pieces of roofing material were allowed to fall in the process of constructing the roof, or that the men on the roof were engaged in sweeping snow or waste material from the roof. There was no testimony tending to show that material had been swept from the roof prior to this time, and it does not appear that the defendant had any reason to anticipate such a thing would be done.

In American Bridge Co. v. Seeds, 144 Fed. 605, 75 C. C. A. 407, 11 L. R. A. (N. S.) 1041, this court, speaking by Judge Sanborn, said:

"It is not conceded that the alleged omissions of the defendant constituted any breach of its duty to the plaintiff to exercise ordinary care to provide him a reasonably safe place in which to do his work. But, if they had constituted such a breach, it is not perceived how they could sustain a judgment against the bridge company for an injury caused by the negligent act of another, which it did not induce and could not have foreseen. The test of liability in cases of alleged concurring negligence, like the one in hand, is the same as in all other actions for negligence. It is the true answer to the questions: Was the injury the natural and probable consequence of the acts on which the action is based? Was it reasonably to be anticipated from them? If it was, the action may be maintained, although the negligence of another concurred to produce it. The burden of proof was upon the plaintiff to establish a state of facts which would naturally lead to the conclusion that his fall was the natural and probable consequence of the loosely planked space and of the absence of the snub rope. The only evidence upon this subject was the evidence of experience. These omissions never did cause a fall. None ever occurred until a new and independent force, the careless signal of the foreman, sent the swinging load against the plaintiff and threw him to the ice below."

And in Burt v. Advertiser Newspaper Co., 154 Mass. 238, 28 N. E. 1, 13 L. R. A. 97, Mr. Justice Holmes said:

"Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual."

And in the case of Taylor v. Washington Mill Co. (Wash.) 97 Pac. 243, it was said:

"It is not the duty of an employer to follow his employés around in order to protect them from situations made dangerous by unusual occurrences unexpected, and not to be anticipated by either the master or the servant."

The true test in this case is clearly stated in Thompson on Negligence, vol. 2, § 22. It is there said:

"The general rule is that one who has contracted with a competent and fit person exercising an independent employment to do a piece of work, not in itself unlawful or attended with danger to others, according to the contractor's own methods, and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his subcontractor or his servants, committed in the prosecution of such work. An independent contractor is one who renders service in the course of an occupation representing the will of his employer only as to the result of his work and not as to the means by which it is accomplished. The contractor must answer for his wrongs committed in the course of the work by his servants." Brady v. Chicago & G. W. Ry. Co., 114 Fed. 100, 52 C. C. A. 48, 57 L. R. A. 712; American Bridge Co. of N. Y. v. Bainum, 146 Fed. 367, 76 C. C. A. 633; Williams Cooperage Co. v. Headrick, 159 Fed. 680, 86 C. C. A. 548; Southern Pacific Company v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391; Water Co. v. Ware, 16 Wall. 566, 21 L. Ed. 485; Atwood v. Chicago, R. I. & P. Ry. Co. (C. C.) 72 Fed. 447; Dwyer v. Nat. Steamship Co. (C. C.) 4 Fed. 493; McNamee v. Hunt, 87 Fed. 298, 30 C. C. A. 653; Casement v. Brown, 148 U. S. 615, 13 Sup. Ct. 672, 37 L. Ed. 582; Salliotte v. King Bridge Co., 122 Fed. 378, 58 C. C. A. 466, 65 L. R. A. 620.

In the case of Penner v. Vinton Co., 141 Mich. 77, 104 N. W. 385, a Michigan case, the plaintiff was employed by the defendant in a building which was being remodeled. At the time of his injury he was

engaged in removing some joists. The plaintiff testified that he did not know what hit him, but that he was knocked senseless. No person saw him struck, but the evidence tended to show that above the place where the plaintiff was at work there were openings in the brick wall which the masons, working for an independent contractor, were filling. A recovery was sought in that case as in this, based upon the failure of the defendant to provide a safe place for the plaintiff to work. It was there alleged that the workmen above, employés of the contractor, in the course of their work permitted a brick or something of a hard nature to fall upon the plaintiff, causing his injuries. At the trial the court directed a verdict for the defendant, and, in sustaining the judgment, the Supreme Court said:

"(1) The negligence which caused the plaintiff's injury, if any, was that of an employé of Mr. Fisher, over whom the defendant had no control. The wall was not being torn down, but being built up. Defendant is not chargeable with negligence that any of these bricklayers might commit in throwing or dropping a brick from the building.

"(2) The doctrine of a safe place has no application here. The place was safe, and was only made unsafe by the negligent act of a third party, for which the defendant was not responsible."

Here the place furnished the plaintiff for the performance of his work was in itself no way dangerous, and the defendant had no occasion to anticipate that the servants of the contractor, over whom it had no control whatever, would sweep bricks from the roof and thereby cause injury to the plaintiff.

The conclusion reached is that the record fails to show actionable negligence, or any negligence, upon the part of the defendant, and the judgment of the Circuit Court is affirmed.